November 23, 1891.

MARTIN & SMITH and A. C. PATE, for the relators.

---

HEFLIN *v.* THE STATE.

88  151
f113 738

1. It does not *per se* disqualify a judge of the superior court to preside on the trial of an indictment for perjury, that the same judge presided at the trial of the case in which the alleged perjury was committed, and also of a second case in which one of the witnesses in the first was convicted of perjury. Nor does any disqualification result as matter of law from the judge having, by reason of his acquaintance or supposed acquaintance with the facts thus derived, privately and unofficially advised the prisoner's counsel to induce his client to plead guilty, saying that there was no doubt about his guilt and no earthly chance for him to be acquitted.

2. On a trial for perjury, evidence is relevant which tends to show that the accused, in a private interview with another person, endeavored to influence that person to give false testimony in the same case in which the accused afterwards gave the alleged false evidence.

3. The whole *res gestæ* of a transaction, including declarations of the participants made at the time, may be adduced in evidence against the accused to show that his testimony as to some of the particulars of the transaction was false.

4. As a general rule, in order to convict a witness of perjury alleged to have been committed on the trial of a case in a court of record, the record of the case, or a duly authenticated transcript thereof, is necessary to prove the judicial proceeding in the course of which the alleged perjury was committed.

5. On a trial for perjury, where there is no direct evidence of the existence, finding or pendency of any indictment for murder against George Eddleman, or of any issue raised upon such indictment, there is no proper foundation for a charge to the jury that if they believed from the evidence that one George Eddleman was tried for murder in the superior court of the county of Fulton, so far as the oath having been taken in some judicial proceeding, the case

to that extent would be made out. That there was a trial, and that the person now accused of perjury was sworn and testified therein as a witness, would not dispense with legal evidence of the existence of the judicial proceeding, the same being essential to show what was in fact tried, and its identity with the case described in the indictment for perjury.

6. The indictment of George Eddleman not being duly proved, and there being no evidence as to what issue was formed upon that indictment, it was error to charge the jury that if they believed from the evidence that it was an issue upon the trial of George Eddleman whether at the time he shot Gresham he (Gresham) was advancing upon him with a knife in his hand, or something like a knife, that would be a matter material to the issue.

7. Other special grounds of the motion for a new trial, so far as duly verified, construing them in the light of the whole charge of the court and of all the facts in the record, show no material error; but the evidence being deficient as to the judicial proceeding in which the alleged perjury was committed, and as to the issue, if any, involved in that proceeding, and the court having charged erroneously on that branch of the case, the accused, as matter of strict law, is entitled to a new trial.

December 7, 1891.

Criminal law. Perjury. Disqualification of judge. Evidence. Charge of court. Before Judge RICHARD H. CLARK. Fulton superior court. September term, 1890.

Heflin was convicted of perjury, and excepted to the denial of a new trial. The assignments of perjury were, that Heflin willfully, etc. swore that on the day and at the time of the shooting of Gresham by Eddleman, he (Heflin) was in the alley-way leading back of the saloon in which the shooting occurred, and that standing near the back door of the saloon (which door leads from the alley-way into the saloon), he (Heflin) saw Gresham with something in his hand which he (Heflin) took to be a knife, advancing on Eddleman when he was shot by Eddleman, that immediately after the shooting he (Heflin) left, going from the alley-way out on Alabama street, and that he never told anybody what he had seen;— when in truth Heflin not only did not see Gresham with something in his hand which Heflin took to be a knife

at the time he was shot by Eddleman, but Heflin was not in the alley-way at the time of the shooting, and was not standing at or near a back door leading from the alley-way into the saloon where the shooting took place; yet Heflin did nevertheless willfully, etc. swear, etc. From the official report referred to in the third part of the opinion it appears that the eleventh ground for new trial was, because the court erred in admitting in evidence, over the objection of defendant, the following declaration of Eddleman as testified to by Simpson, which declaration was made some moments after the encounter between Eddleman and Gresham was finished and Eddleman was immediately arrested by Simpson, who was a policeman: "When I got in there [the place where the shooting occurred], Eddleman said that he shot Gresham because he was trying to shoot him, and called up Mr. Mehan to prove it." And the declaration of Gresham, over like objection, testified to by the same witness, occurring at the same time and under like circumstances: "Gresham followed me back when I went up to Mr. Eddleman, and when Eddleman made that remark Gresham said, 'Search me. I have not got a thing in the world.'" The motion for a new trial alleged that these declarations were mere hearsay, and were irrelevant and inadmissible against Heflin.

The opinion states all other material facts.

Frank A. Arnold, for plaintiff in error.

C. D. Hill, solicitor-general, *contra*.

Bleckley, Chief Justice.

1. His honor Judge Clark, who presided in the trial of this case, was subjected to a novel and extraordinary challenge before the trial began. Counsel for the prisoner objected to his presiding "for lack of impartiality and for his prejudice against him," the prisoner. The grounds of this objection were that his honor had pre-

sided in the trial of Eddleman and also of McCord, and
become firmly convinced that the prisoner had com-
mitted perjury in the Eddleman case, and had, on two
different occasions, approached the prisoner's counsel
and said to him there was no doubt about the guilt of
his client and advised him to induce his client to plead
guilty, as there was no earthly chance for him to be ac-
quitted. In a note to this ground of the motion for a
new trial, the judge says : " I had presided on the Eddle-
man trial; also on one of the trials of McCord, for per-
jury. I knew that McCord was tried again, found guilty,
and the conviction was final. In the interest of pending
justice and economy, I wished to save another trial
which necessarily involved the evidence in the Eddleman
and McCord cases, that I and the public had heard so
often. Nevertheless, I had no prejudice against Heflin,
and tried him as though I had heard of the case for the
first time." There can be no doubt of the scrupulous
accuracy and truth of this statement. Not the least
shade of a suggestion at variance with it anywhere ap-
pears in the record before us. That the trial was con-
ducted uprightly and impartially so far as the presiding
judge was concerned, admits of no question. There is
certainly no law which renders it a disqualification *per
se* to try an indictment for perjury, that the judge is the
same who presided at the trial in which the alleged per-
jury was committed, and also at the trial of another wit-
ness who testified in the first case. It can make no dif-
ference that the judge had thus become convinced of
Heflin's guilt, because the opinion of the presiding judge
as to the guilt or innocence of the prisoner, however that
opinion may have been formed, does not unfit him for
discharging his judicial duties with the most complete
fairness and impartiality. These duties are exactly the
same whether the accused is guilty or innocent, and upon
that question the judge has no deciding power and is not

permitted to intimate to the jury his opinion.    That all
his functions may be duly exercised irrespective of his
own opinions is taken by the law for true; this is shown
by the fact that he is required to hear all the evidence
as it is delivered to the jury, and after so doing, to in-
struct the jury upon the law applicable to the same.    It
could hardly be expected that from hearing all the evi-
dence he would not form some opinion of his own as to
the actual guilt or innocence of the person on trial, but
the law cares not for this, and is not so absurd as to make
it work a disqualification to preside throughout the trial.
If he can hear the evidence once without disqualifying
himself, we see not why he might not do so twice or
thrice.    As to advising or urging counsel to induce his
client to plead guilty, this, as we understand the record,
was not done judicially or publicly, but privately and
unofficially.    We put this construction upon the language
in the record because nothing to the contrary is stated,
and we cannot gratuitously impute to any judge of the
superior court, and especially to one of such high char-
acter and such a nice sense of judicial propriety, any-
thing unbecoming the judicial station.    For the judge
privately and unofficially, that is, in his capacity as a
mere citizen, to advise a member of the bar to do thus
and so touching a pending case, for such and such rea-
sons, cannot be held to render him legally disqualified
to preside in the case concerning which he thus volun-
teers to give his advice.    A citizen of the commonwealth,
though he may chance to occupy a seat on the bench,
is not cut off from friendly personal intercourse with the
members of the legal profession, and what he may chance
to say to them as to how he thinks they ought to serve
their clients, or as to his opinions and convictions in re-
gard to the merits of their cases, cannot be treated as
official conduct and become matter for review and re-
versal by the Supreme Court.

2. One of the theories of the prosecution was that Heflin and McCord had, before the trial of Eddleman, combined to commit perjury in Eddleman's behalf. As tending to prove this theory, a witness of the name of Owens was introduced, who, after explaining that he overheard an interview between McCord and Heflin, testified that in that private interview McCord said to Heflin, "If I get up on that stand and swear that Tom Gresham had a knife cutting at George Eddleman, I will have to have better security than John Hilderbrand"; that Heflin replied, "The money is all right; you will get the money"; then McCord said, "Suppose, now, that somebody gets up and swears I was not in the alley?" to which Heflin replied, "Everything was in such confusion, nobody could tell who was in the alley." The testimony of Heflin in Eddleman's case on which perjury is assigned relates in part to his own presence in the alley here spoken of. We have no doubt the evidence of Owens was admissible as tending to show that Heflin endeavored to influence McCord to give false testimony in respect to the very same matter touching which his own alleged perjury was committed.

3. The whole *res gestæ* of the killing of Gresham by Eddleman, including declarations made at the time by each of them, might be necessary to throw light upon those particulars of the transaction to which Heflin testified on Eddleman's trial, and which are involved in the assignments of perjury. We think, therefore, that the declarations objected to (for which see the official report) were admissible.

4. The indictment in the present case alleged that Heflin, on a certain day, "in a judicial proceeding in Fulton superior court, before RICHARD H. CLARK, judge presiding, after a lawful oath had been administered to him, and in a matter material to the issue, the issue being in the case of the State of Georgia against George

H. Eddleman, charged with the murder of Thomas G. Gresham, a plea of not guilty having been entered by the said Eddleman, which said case was being then and there tried in said superior court, and the said Heflin being then and there a witness in said case in behalf of the defendant the said George H. Eddleman, did willfully, knowingly, absolutely and falsely swear," etc. No record of the case here referred to was put in evidence, nor was the existence or contents of any indictment against Eddleman, or of any plea to such indictment, proved in any manner whatsoever. The official stenographer of the court testified as follows : "I recollect the trial of the case of the State against George H. Eddleman, charged with the killing of Thomas E. Gresham. I did take down the testimony, or part of the testimony, in that case. I did take down the testimony of M. R. Heflin in that case. That testimony was taken down correctly. This is a transcript of my notes of the testimony of M. R. Heflin in the case of The State against George Eddleman for murder. This is the testimony taken at the time that George Eddleman was being tried. This killing of Gresham took place in the fall of 1888 ; I don't remember the month. Judge RICHARD H. CLARK presided in that case. I was present when Heflin was sworn as a witness, and when he took the stand and testified. That was in Fulton county. I could not be positive, but I think Mr. Hill administered the oath. . . . Mr. Hill was solicitor-general at the time. . . . I am not certain that he administered the oath ; it may have been one of the other attorneys. . . . It may have been Judge Dorsey or Mr. Cox. . . . I recollect his being sworn to tell the truth, and nothing but the truth, in the case of the State against George Eddleman, charged with murder. . . . I am positive he was sworn. He was sworn as a witness in the case of the State against George Eddleman." This extract furnishes all

the evidence which the record contains of the existence
of any judicial proceeding between the State and Eddle-
man.   Unless by admission or otherwise the formal
proofs are waived or dispensed with, the production of
the record or of a duly authenticated transcript thereof
is, in such cases, essential.   "The cause and issue wherein
the perjury was committed are proved by the record,
which should be in the form and with the verification
required by the ordinary practice of the court." 2 Bish.
Cr. Procedure, §933b.   The authorities, early and late,
on this question seem to be of uniform tenor. 2 Starkie's
Ev. 859; Buller's Nisi Prius, 243; 2 Chit. Cr. Law
312*a;* 2 Arch. Cr. Pr. & Pl. *602; 3 Russ. on Cr. *95;
2 Roscoe's Cr. Ev. *843; 3 Jacob's Fisher's Dig. 3546
*et seq.* ; 2 Whart. Cr. Law, §1326 ; 3 Greenlf. Ev. §197;
2 Taylor's Ev. §1668.   This requirement as to the
medium of proof corresponds with the general rule of
law that the proceedings of a court of record are known
only by means of the record itself.   *Collins* v. *Bullard,*
57 *Ga.* 333; *Rutherford* v. *Crawford,* 53 *Ga.* 139; *James*
v. *Kerby,* 29 *Ga.* 684.

5. There being no direct evidence of the existence,
finding or pendency of any indictment for murder
against Eddleman, or of any issue raised upon such in-
dictment, it follows from what has been said above that
no proper foundation was laid for charging the jury
upon such a hypothesis.   The court therefore erred in
the part of the charge which, as set out in full, was ex-
pressed in this language : "If you believe from the evi-
dence that one George Eddleman was tried for murder
in the superior court of Fulton county, and in that case
the defendant was administered an oath by the solicitor-
general, that, so far as the oath having been taken in
some judicial proceeding and having been administered,
the case to that extent, the burden being upon the part
of the State, would be made out."   The stenographer's

evidence was all appropriate to open the way to the introduction of the evidence given by Heflin on the trial of Eddleman, and for that purpose it was all admissible; but in order to show the actual existence of the case of The State *v.* Eddleman as a judicial proceeding in the superior court of Fulton county, and its identity with the case described in the bill of indictment, it was necessary to go further and prove by the record an indictment against Eddleman (for he could not have been legally tried without an indictment), and that there was an issue raised upon that indictment, and what that issue was. The bill of indictment in the present case alleges that there was a plea of not guilty, but no evidence whatever as to the plea was adduced. Consequently, the jury trying Heflin did not know by evidence either that Eddleman was indicted, or upon what issue he was tried.

6. For the same reason, it was error to charge the jury thus: " If you believe from the evidence that it was an issue upon the trial of George Eddleman whether at the time he shot Gresham he (Gresham) was advancing upon him with a knife in his hand, or something like a knife, that would be a matter material to the issue." This charge assumes that there was evidence before the jury from which they could ascertain what the issue was which was made up in the trial of Eddleman, and that they could apply thereto the testimony given by Heflin upon that trial and determine its materiality.

7. Various other special grounds are set forth in the motion for a new trial. Some of them are not fully verified by the presiding judge. Construing those which are verified in the light of the whole charge and of all the facts in the record, we think no material error, further than we have indicated, appears. But the evidence was manifestly deficient on a material element of the case, and the court having committed the errors which we

have discussed, the prisoner, as a matter of strict law, is entitled to a new trial. Doubtless it is only where such a deficiency in the proof is pointed out and insisted upon, that a reviewing court would be under the duty of having the case tried over on account of failure on the part of the State to supply the formal record evidence which the law requires. It would seem that this point was not raised in *Elder* v. *The State,* 52 *Ga.* 581, and we are not aware of any case in the *Georgia Reports* in which it has been considered. The clear law of it, however, is as we now declare it, and whether the prisoner be guilty or innocent, he cannot be punished until he is legally convicted.                    *Judgment reversed.*