JOHN INGLES v. McMILLAN, *Judge.*

No. A-1017.    Opinion Filed March 7, 1911.

(113 Pac. 998.)

1. JUDGES—Disqualification—Bias. The constitutional provision which guarantees to every person charged with crime a trial without prejudice, in so far as it relates to the judge who presides at the trial, does not include the opinion of the judge as to the guilt or innocence of the defendant, but, in order to disqualify a judge, it must be shown that he is biased against or entertains ill will or hostility toward the defendant of such a character as might prevent him from giving the defendant a fair trial, and this must be shown as a matter of fact, and not as a matter of opinion of the defendant or any other person. A judge does not try the facts of a case. He simply passes upon the questions of law presented.

2. CONTEMPT — What Constitutes — Private Interviews With Judges. It is highly improper for any person to approach or attempt to converse with a judge with reference to any case or matter pending before him. Such an attempt is an act of contempt of court, and subjects the person resorting to it to punishment for contempt.

3. JUDGES—Disqualification—Prejudice—Diligence in Urging. If a defendant, acting in good faith, really desires a change of judge upon the ground of prejudice, he should exercise due diligence in asserting his rights as soon as he can conveniently do so. after he has acquired knowledge or learns of prejudice against him on the part of the trial judge.

(Syllabus by the Court.)

Petition of John Ingles for a writ of mandamus to R. Mc-Millan, Judge.    Writ denied.

*E. E. Glasco,* for petitioner.

*Ben F. Williams, Jr.,* and *Ben Franklin,* Co. Atty., for respondent.

FURMAN, PRESIDING JUDGE. Being prosecuted in the district court of McClain county by information for the crime of murder, petitioner, John Ingles, on the 16th day of February, 1911, filed with the clerk of said court an application for a change of judge, alleging, in substance, that the respondent, Hon. R. McMillan, the regular judge of said court, was so biased and prejudiced against the petitioner that petitioner could not have a fair and impartial trial in said court before said respondent. In support of this general charge, it was further alleged that petitioner had had a hearing on *habeas corpus* before respondent on an application for bail; that on said hearing said respondent had before him all of the evidence heard and taken at the preliminary hearing of petitioner, and also the evidence taken at coroner's inquest held over the body of the deceased, and, after hearing all of said evidence on said *habeas corpus* proceedings, respondent made an order refusing bail to petitioner, and committed him to the custody of the sheriff of McClain county to await trial on said charge of murder; that thereby respondent became acquainted with the facts of the case as presented by the state, and that, by the order of respondent denying bail to petitioner, respondent had judicially acted upon and determined the probable guilt of the petitioner upon said evidence, and thereby respondent had become prejudiced against petitioner, and became incompetent and disqualified to sit upon the trial of this case. In addition to the above general statements, petitioner alleged that some time during the month of October, 1910, at the Love Hotel, in the city of Purcell, in McClain county, the wife and mother of petitioner had approached respondent and asked him if he would not allow bail to petitioner upon said charge, and in reply thereto respondent stated that he could not give bail to petitioner as petitioner was guilty of a cold-blood murder, all of which was duly sworn to by

. petitioner. To this motion and affidavit was attached the affida-
vits of the mother and wife of the petitioner, supporting the al-
legations contained in the application for a change of
judge. This motion for a change of judge was duly
served on the county attorney, and was presented to the
district judge, who, upon considering the same, declined to
make an order disqualifying himself to hear and try said cause.
On the 18th day of February petitioner applied to this court for
a writ of mandamus requiring respondent to disqualify himself to
act as judge in the trial of this cause. An alternative writ of
mandamus was issued and set down for hearing on the 20th day
of February, at which time respondent filed his reply, which is
as follows:

"R. McMillan, the defendant herein, responding to the state-
ments and allegations contained in the petition in the above cause,
for his answer says: He admits that John Ingles, relator herein,
is a resident of McClain county, Okla., and stands charged by
information in the district court of said county and state of the
crime of murder. He also admits that he, respondent herein, is
the judge of the district court of McClain county, State of Ok-
lahoma and that said cause of the State of Oklahoma
versus John Ingles et al., was set for trial in said court
on the 20th day of February, 1911. Respondent admits that on
the 16th day of February, 1911, the relator, John Ingles, filed his
written application in this court, charging respondent herein with
such prejudice against him that he cannot have a fair and im-
partial trial in said court; that a copy of said petition was duly
served upon the county attorney of McClain county, Okla., and
after the presentation of said application, and the court being
fully advised in the premises, this respondent refused to disqualify
himself to preside as district judge in the trial of said cause.
Respondent also admits that said application, with the affidavits
thereto attached of relator, John Ingles, his mother, Nancy
Ingles, and Myrtle Ingles, are a part of this petition, and were
duly before the respondent in said application. Respondent now
for answer to said application and to the petition herein and the
said exhibits, to wit, the affidavits of Nancy Ingles and Myrtle
Ingles, has this to say: Respondent admits that he was ap-

proached by Nancy Ingles and Myrtle Ingles aforesaid in the lobby of the Love Hotel in the city of Purcell as alleged, and says that they brought a conversation with him about giving the relator, John Ingles, bond, and that this conversation was after respondent had heard the proof on application for bail in said case. Respondent says that in said conversation on the request of said wife and mother to give said John Ingles bond that he answered them that he could not give him bail; that the respondent did not know what his side of the case was and what he would prove on final trial, as he had not disclosed his side of the case; but that, as the cause then stood, the offense alleged against the said John Ingles was murder, and he would hold him as such under the proof. He denies that he ever said that the said John Ingles was guilty of murder, and he did not and could not know upon the partial disclosure of the surrounding facts of the case as shown by the state and defense under the *habeas corpus* proceedings. He admits that he said in part what is contained in the two affidavits of the mother and wife of John Ingles (except he denies that he said it was a bloody murder) but made such statement in the context and conversation as stated above, and in no other way. Respondent distinctly remembers this conversation and all that was said. Respondent, further answering, says that he has another recollection of some other conversation had with one or both of these women before he had heard any part of the case for bail, and says, on being approached then for bail, he told them that he could not grant bail until he heard the case, and that the accusation against the said John Ingles and his brother, Rusty Ingles, was murder. In that conversation he may have said that under such accusation they could be found guilty of murder. Respondent here and now absolutely denies that he ever said or thought that either of said defendant, John Ingles or Rusty Ingles, were guilty of murder. He did not and could not know. He denies all bias or prejudice against either of the defendants, and avers his absolute ability, willingness, and readiness to give them a fair and impartial trial under the law and evidence of the case. Respondent refused the said John Ingles bond because homicide was admitted, the woman was killed, and he felt at the time that the extenuating circumstances were not sufficient to justify bond without his knowing more and further about the facts of the case. Therefore respondent, having fully

answered herein, prays to be hence dismissed with his reasonable costs."

Upon the hearing of this matter, the motion and affidavits presented to the trial court for a change of judge were presented to the court, and, in addition thereto, the wife and mother of the petitioner were introduced as witnesses. They both testified substantially as is set out in the motion and in their affidavits attached thereto. Upon cross-examination the wife of petitioner stated that soon after her alleged conversation with respondent she informed one of the attorneys for petitioner of the statements alleged to have been made to her by respondent. She also testified that, so far as she knew, there was no unkind feeling existing between petitioner and respondent, and no ill will upon the part of respondent toward petitioner, except such as was indicated in the conversation between said witness and the respondent at the time she and her mother approached respondent for the purpose of getting him to grant bail to the petitioner, and that she based her affidavit entirely upon the alleged remarks made by respondent in reply to her request that he grant her husband bail. She also testified that this conversation took place at the noon hour, when court had adjourned for dinner. The testimony of the mother of the petitioner was substantially the same as that of his wife, except that she testified that the remarks alleged to have been made by respondent were made to the wife of the petitioner and herself in the evening after the court had adjourned for the day.

The history of the statutes in this state with reference to a change of judge upon the ground of prejudice and some of the evils and abuses growing out of these statutes were clearly and correctly stated by Judge Richardson in the case of *Lewis v. Russell*, 4 Okla. Cr. 130, 111 Pac. 819, as follows:

"Prior to the passage of the act approved March 22, 1909 (article 6, c. 24, Snyder's Comp. Laws Okla.), the uncorroborated affidavit of the accused filed in a criminal case, stating in general terms that because of the bias and prejudice of the presiding judge the accused could not have a fair and impartial trial before

him, of itself operated to disqualify such judge. The truth of the averment and the good faith of the defendant in making it were immaterial, and were not issuable anywhere at any time. A change of judge imperatively resulted from the filing of the affidavit. Section 5427, Wilson's Rev. & Ann. St. Okla. 1903; *Lincoln v. Territory*, 8 Okla. 546, 58 Pac. 730; *Buchanan v. State*, 2 Okla. Cr. 126, 101 Pac. 295. However moderately and justly this power of disqualifying judges may have been exercised before statehood, after the admission of Oklahoma into the Union it was greatly abused. Judges were constantly disqualified by defendants not overscrupulous in the use of their oaths, where no cause either real or apparent for change of judge existed, and where it was sought for the palpable purposes only of delaying, obstructing, and ultimately defeating justice. The affidavit was generally filed after the case was called for trial, and after a motion for a continuance and after an additional motion for a change of venue had been filed and overruled. The fact that no notice of the filing of such affidavit had been given, and that the state had gone to all the trouble and expense of preparing for trial, and had its witnesses present at the cost of the county, was immaterial. Often the trial calendar was deranged and the business of the court thrown into confusion. Either a continuance resulted, or else an exchange of districts by the disqualified judge with some other district judge was necessitated, usually involving a loss of time aggregating about two days for each judge, and always the expenditure by the state of the traveling and boarding expenses of each judge thus assigned to a district other than his own."

The practice of disqualifying judges upon the ground of prejudice had been so much abused that it had fallen into great disrepute. In the majority of cases, it was the last resort of a desperate criminal to delay and defeat justice. Dissatisfaction with reference to this abuse became so general and pronounced that the Governor recommended that the Legislature enact such laws as would do away with disqualifying judges upon this ground, and the Legislature was on the point of complying with this recommendation of the Governor when they were advised that such a law would be repugnant to section 6 of article 2 of our Constitution, which is as follows:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and

for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay or prejudice."

The Legislature was further advised that, while they could not abolish the right of a change of judge upon the ground of prejudice, yet they did have the power to provide reasonable and proper regulations by which the question of prejudice could be decided. In response to this advice and the demand which existed for relief, the Legislature passed the act of 1909. Our views upon this subject are fully presented in the cases of *Ex parte Hudson*, 3 Okla. Cr. 393, 401, 106 Pac. 540, 107 Pac. 735; *Lewis v. Russell*, 4 Okla. Cr. 129, 111 Pac. 818; *O'Brien v. Clark* (decided at this term) *ante,* 113 Pac. 543. It is not necessary to repeat here what was said in those cases.

The case now before us for the first time requires a decision as to what it takes under our Constitution to constitute disqualifying prejudice on the part of a trial judge. Under our system the jury try the facts and the judge tries the law. Section 6848, Snyder's Comp. Laws Okla. 1909, is as follows:

"If, at any time after the evidence on either side is closed, the court deem it insufficient to warrant a conviction, it may advise the jury to acquit the defendant. But the jury are not bound by the advice, nor can the court, for any cause, prevent the jury from giving a verdict."

From this it is seen that a jury is not bound by instructions from the court as to the facts of a case and may lawfully convict a défendant in spite of the judges' advice to the effect that the evidence is not sufficient to warrant a conviction. As the determination of the facts of a case is largely taken away from the trial judge, his opinion as to the guilt or innocence of a defendant is of very little importance, and does not at all disqualify him from giving the defendant a fair trial. If this were not true, no judge would be qualified to try any case if it had been before him either upon writ of *habeas corpus* or upon a former trial. The prejudice of a judge which disqualifies him means bias or ill will, and must be personal on his part and against the defendant, and this prejudice must be proven to exist as a matter of

fact, and not as a matter of opinion on the part of the defendant. A defendant is easily persuaded of the prejudice of a judge. Adverse rulings always convince him of that fact, and, if the opinion of the defendant that the judge is prejudiced against him is sufficient to disqualify the judge, every defendant, when directly pressed, would seek delay in this manner, and that which was intended to promote fairness and justice would become exceedingly unfair to the state, and would result in the defeat of justice. A change of judge is wrong as to the public unless the necessities of justice to the defendant require it. It causes expense, it works delay, and it endangers a prosecution.

This question has been repeatedly passed upon by the appellate courts of other states. In Kansas prejudice on the part of a judge is a ground for a change of venue in a case. In the case of *State v. Morrison,* 67 Kan. 144, 72 Pac. 554, the Supreme Court of Kansas said:

"It is not the opinion which a trial judge may entertain as to the guilt or innocence of a defendant about to be put upon trial in his court which disqualifies such judge and entitles the defendant to a change of venue, but it is the existence of such prejudice in the mind of the judge against the defendant as may prevent defendant from having a fair and impartial trial of his cause which disqualifies, and such prejudice must be clearly made to appear."

See, also, *State v. Bohan,* 19 Kan. 53. In the case of *State v. Grinstead,* 63 Kan. 593, 64 Pac. 49, that court said:

"A defendant in a criminal case is not entitled to a change of venue on account of the prejudice of the judge against him, because he is himself prejudiced in feeling toward the judge, had violently opposed him in a political campaign for his office, had published during and subsequently to such campaign vituperative and libelous newspaper articles against him, calculated to arouse him to feelings of resentment and prejudice, and, by testimony which the judge asserted to be false, had endeavored to secure his removal from office for violations of the act to prohibit corrupt practices at elections, when the judge, notwithstanding all such unfriendly conduct, by statement filed in court, disavowed all feelings of prejudice against the defendant, and when there was nothing proved against him, the judge, on the hearing of the motion for

change of venue showing bias or prejudice on his part toward the defendant."

Section 170 of the Code of Civil Procedure of California provides that no judge should sit or act in an action or proceeding "when it appears from the affidavit or affidavits on file that either party cannot have a fair and impartial trial before any judge of a court of record about to try the case by reason of the prejudice or bias of such judge." In the case of *Johnson v. Dankan,* 9 Cal. App. 522, 99 Pac. 729, the Court of Appeals of California, in construing this statute, said:

"The affidavits show that in February, 1905, the trial judge wrote a letter to the assembly while the Legislature of the state was in session, referring to certain charges pending against him, by which it was sought to impeach him, which letter contains some very emphatic expressions which are not couched in the most polite language. He refers to the charges as having been made against him by 'a few cowardly and disreputable conspirators * * * pettifoggers and disgruntled litigants * * * vile and cowardly slanderers without reputable character or standing in the community in which they reside.' Conceding that the record shows that defendant's attorney was one of the parties seeking to have the judge impeached, the statement in the letter is general, no name is mentioned, and it was evidently made under provocation and in a spirit of anger. It does not in any way refer to defendant, nor is there anything which would lead to the conclusion that any bias or prejudice or feeling had been shown by the judge toward the defendant personally. It further appears that in a previous trial of one Forgeus against this same defendant in the same court, and before the same judge, some trouble occurred between this defendant and Mr. Cassin, an attorney of the local bar, and the judge made an order imposing a fine upon defendant, and did not fine Mr. Cassin, while it is claimed that Cassin was the one particularly at fault. Conceding that the judge erred in this, that fact of itself does not necessarily show any bias or prejudice on the part of the judge. It may have been the duty of the judge, in order to maintain the proper respect for the court, to impose the fine, and it may also have been his duty to have imposed a fine upon Mr. Cassin. If the conduct of the defendant in said matter was such as to call upon him the imposition of a fine, it would have been the duty of the judge to impose such fine even if defendant had been his best friend. The

law knows no friend, no foe, and no flinching from duty. It is not at all unusual for a litigant to become angry at the judge, and in such moment of anger to believe the judge to be partial—even to abuse him—when, in fact, the judge is only doing his duty without regard to the question as to the personality of the parties. The fact that the trial judge was indebted to the Savings Bank of Santa Cruz, of which plaintiff is a stockholder and one of the directors, is not a legal disqualification, and as a matter of law we cannot say that it shows bias or prejudice. We must presume the trial judge to be honest and solvent."

In the case of *People v. Findley,* 132 Cal. 301, 64 Pac. 472, the defendant was on trial for embezzling $8,000 of public money in his hands as tax collector, etc. When the case was called for trial, he filed an affidavit of prejudice against the judge. The Supreme Court of that state, in passing upon this matter, said:

"Under subdivision 4 of section 170 of the Code of Civil Procedure, in order to obtain the change of the judge before whom a criminal case is to be tried, it is not sufficient that the affidavit of the defendant should state simply that the defendant 'believes that he cannot have a fair and impartial trial' before the judge by reason of his bias or prejudice, but it must be made to appear from the facts stated in the affidavit or affidavits on file, to the satisfaction of a reasonable mind, that a fair trial cannot be had before the judge about to try the case by reason of the bias or prejudice of the judge."

In the case of *Vance v. Field,* 89 Ky. 178, 12 S. W. 190, the Supreme Court of Kentucky decided that, in order to disqualify a judge from presiding at a trial upon the ground of prejudice, the ground of such disqualification must be such as would prevent any official of personal integrity from presiding in the case or as would prevent him affording a fair and impartial trial.

In the case of *State v. Blount,* 124 La. 206, 50 South. 13, that court said:

"Defendant at the same time moved the trial judge to recuse himself on the ground that he had formed and expressed an opinion concerning the matter in question adverse to the defendant. The motion set forth no legal cause for recusation, and was properly treated by the trial judge as frivolous. Where a motion assigns no legal grounds of recusation, it may be overruled with-

out reference to another judge. *State v. Chantlain,* 42 La. Ann. 718, 7 South. 669. This court, in recently refusing the writs in *State of Louisiana v. Avery Blount, In re Avery Blount Applying for Writs of Mandamus and Prohibition* No. 17,461 (no written opinion filed), tacitly approved the ruling in the case of *State v. Chantlain.*"

In the case of *Heflin v. State,* 88 Ga. 151, 14 S. E. 112, 30 Am. St. Rep. 147, the Supreme Court of that state said:

"It does not *per se* disqualify a judge of the superior court to preside on the trial of an indictment for perjury that the same judge presided at the trial of the case in which the alleged perjury was committed, and also of a second case in which one of the witnesses in the first was convicted of perjury. Nor does any disqualification result as matter of law from the judge having by reason of his acquaintance or supposed acquaintance with the facts thus derived privately and unofficially advised the prisoner's counsel to induce his client to plead guilty, saying that there was no doubt about his guilt and no earthly chance for him to be acquitted."

In the case of *Cochran v. State,* 113 Ga. 736, 39 S. E. 337, the Supreme Court of that state said:

"A judge of the superior court is not disqualified from presiding at the trial of an indictment merely because previously thereto he held a court of inquiry and bound the prisoner over."

In the case of *State v. Woods,* 124 La. 738, 50 South. 671, the Supreme Court of that state said:

"The fact that a judge may have formed and expressed an opinion on the merits of a cause furnished no ground for his recusation. Such a suggestion is frivolous, and may be disregarded, without the formality of a reference to another judge."

In the case of *Dailey v. State,* 55 S. W. 821, the Court of Criminal Appeals of Texas said:

"A judge is not disqualified to preside at the trial of one indicted for keeping a disorderly house by reason of having attended a meeting of judges of the state, called for the purpose of devising ways and means for suppressing gaming and disorderly houses, and this though accused was brought under discussion at the meeting."

In the case of *Browning v. Lovett,* 94 S. W. 661, the Court of Appeals of Kentucky said:

"Where the only reason assigned in an affidavit to disqualify a judge from trying an election contest was the fact that the chairman of the Republican county committee, who was alleged to be an active and unscrupulous adherent of the regular ticket, was a brother-in-law of the judge, and had openly boasted of his influence over him, and that contestants believed he would induce him to decide the contest adversely to contestants, but it did not appear that the judge authorized or approved such statements or that he was responsible for them, he properly declined to vacate the bench."

In the case of *McDonald's Adm'r v. Wallsend Coal & Coke Co.,* 135 Ky. 624, 117 S. W. 349, the Court of Appeals of Kentucky said:

"The bias of a judge does not legally disqualify him from trying a case, unless it causes him to act corruptly or with such oppression as to be equivalent to corruption, and the cause for the removal of a judge must be such that, if he assumes to act in spite of it, it involves his personal integrity, or makes it improper that a man of integrity should preside in that matter, and the mere fact that a judge is unfriendly to personal injury does not disqualify him from trying a personal injury action."

In the case of *French v. Commonwealth,* 97 S. W. 427, the Court of Appeals of Kentucky said:

"One charged with a criminal contempt demanded that the trial judge leave the bench, and showed that accused believed that the judge disliked him because of his failure to bring about a reconciliation between the judge and a third person which he claimed to have attempted some years previously at the request of the judge, but did not relate any fact showing such alleged dislike of the judge toward accused and mentioned no act of hostility on his part. Held, that the judge properly refused to vacate the bench on the showing made."

We have not been able to find a single case in conflict with those above quoted where the law requires that prejudice as a matter of fact must be shown in order to disqualify a judge, and our conclusion is that such prejudice does not include the opinion of the judge as to the guilt or innocence of the defendant, but that it means that the judge must be biased against or entertain ill will or hostility toward the defendant, and this must be shown

upon the trial in mandamus proceedings instituted for the purpose of disqualifying the judge. This is an entire departure from the proceedings for disqualifying a judge which existed in this state prior to the passage of the act of 1909. Under the law then in force, the uncorroborated affidavit of the accused filed in a criminal case, stating in general terms that, because of the bias and prejudice of the presiding judge, the accused could not have a fair and impartial trial before him, of itself operated to disqualify such judge. But the statute which then controlled such matters was repealed by the act of 1909, and new and different proceedings were provided for. Upon the hearing of this case, the wife of the petitioner testified that she informed one of the attorneys for petitioner of her alleged conversation with respondent shortly after said conversation occurred. The fact that no motion for a change of judge was filed until the 16th day of February, 1911, more than three months after counsel for petitioner had notice of said alleged conversation, although the November term of the district court of McClain county had been held in the meantime, is strongly persuasive of the fact that counsel for petitioner either did not believe the statements of said witness or did not regard them as evidence of prejudice on the part of the respondent. It was further shown that, before the motion for a change of judge was presented, petitioner had had subpœnas issued and served for witnesses to be present and testify in his behalf at the trial of this case on the 20th day of February, 1911. This indicates that the motion for a change of judge is not now being prosecuted by petitioner in good faith, but merely for the purpose of delaying the trial of this cause. Section 5 of the act of 1909 is as follows:

"Any party to any cause pending in a court of record may in term time or in vacation file a written application with the clerk of the court, setting forth the grounds or facts upon which the claim is made that the judge is disqualified, and request him to so certify, after reasonable notice to the other side, same to be presented to such judge, and upon his failure so to do within three days before said cause is set for trial, application may be made to the proper tribunal for mandamus requiring him so to do."

Under this law, if petitioner and his counsel really were of the opinion that respondent was prejudiced against petitioner, it is reasonable to believe that they would have filed the motion for a change of judge at the earliest possible moment after they learned of such prejudice, and thereby have avoided the trouble and expense of summoning witnesses and the possible delay in the trial of the cause. The constitutional provision requiring that justice be administered without prejudice was only meant to insure a defendant a fair trial and cannot be used for the purpose of delaying and defeating justice. If a defendant desires to avail himself of this constitutional provision and the provisions of the act of 1909, he should exercise due diligence in asserting his rights as soon after he acquires knowledge of the prejudice of the judge as he can reasonably do so, and thereby save unnecessary expense and trouble to his witnesses and to the state and avoid interfering with the administration of justice. We desire to say in this connection that it is highly improper for any person to approach privately a judge and attempt to converse with him or attempt to secure an opinion from him with reference to a case pending before such judge, and we earnestly request the lawyers of this state to instruct their clients to this effect. No one should attempt to discuss a case with a judge before whom it is pending, or make remarks in the presence of such judge to influence him, except in open court, when both sides have equal opportunities to be heard. The members of this court have been greatly annoyed and embarrassed by such attempted interviews and by receiving letters from persons interested in cases pending before us. We do not wish to be harsh or unreasonable, but to attempt to converse with or influence a judge with reference to a matter pending before him is an act of gross contempt, and, if parties interested in cases before us persist in resorting to such practices, we may be compelled to make an example of some of them, and we advise all trial judges in this state to pursue the same course. This is necessary to maintain the dignity of the courts and to protect the reputation of the judges.

Upon the hearing of the return to the writ of mandamus in

this case nothing was proven to indicate bias against or ill will or hostility toward the petitioner upon the part of the respondent. We therefore find that the allegations contained in the motion to disqualify the judge are not sustained. The writ of mandamus is therefore denied.

ARMSTRONG and DOYLE, Judges, concur.