STATE ex rel. LARECY v. SULLIVAN et al.

No. 35627.    Sept. 9, 1952.

248 P. 2d 239.

Hal Welch, Hugo, and Welch, Welch & Shaw, Madill, for petitioner, Walter J. Larecy.

Sam Sullivan, pro se.

PER CURIAM. This is an original proceeding in this court by the State of Oklahoma ex rel. Walter L. Larecy, asking that writs of mandamus and prohibition be granted to compel Sam Sullivan, judge of the District Court of the 19th Judicial District of Oklahoma, to certify his disqualification to hear any proceedings and trial in cause No. 18767, district court of Bryan county, Oklahoma, prosecuted by Hazel M. Larecy, plaintiff, against Walter J. Larecy for divorce and property settlement. The petitioner herein alleges that because of the prejudice and bias of Judge Sullivan, he cannot have a fair and impartial trial and asks that Judge Sullivan be compelled to disqualify and prohibited from making any further orders or judgments in the action and from enforcing or attempting to enforce the ex parte orders made by him on the 17th day of July, 1952, appointing a receiver over the property of Walter J. Larecy, petitioner, and requiring him to pay an additional attorney's fee of $500 and prohibit Leslie J.

Graham, receiver appointed by him, from acting as such.

Petitioner filed an application in the cause in the district court of Bryan county, Oklahoma, supported by affidavits, requesting that Judge Sullivan certify his disqualification in the cause.

The essential facts in this cause are substantially that cause No. 18767, supra, was filed on April 9, 1952, alleging defendant therein to be worth in excess of $100,000; that he was engaged in the sale of road machinery and supplies. At the commencement of the action an ex parte order was entered requiring defendant (petitioner) to pay plaintiff's attorney a fee of $500, and $350 monthly support of plaintiff, and further requiring the defendant to report monthly as to sales, collections and disbursements of the alleged funds.

On April 12, 1952, the defendant therein and petitioner herein filed his answer and cross-petition wherein he counterclaimed for divorce and denied that the value of his property was as claimed by plaintiff. Also, at the same time he filed an application to modify the order for support money by reducing it, which was never done.

In the verified application to disqualify the judge, which was filed at the time he filed his answer and cross-petition, it was alleged that Judge Sullivan was so prejudiced against defendant that he could not accord defendant a fair and impartial trial; that unless Judge Sullivan certified his disqualifications, he would be deprived of right and justice without prejudice guaranteed to him under Article 2, section 6 of the Oklahoma Constitution; that he (defendant) had been a witness in causes pending in his court (State ex rel. Heard v. Sullivan, Judge; State ex rel. Caldwell v. Same, 206 Okla. 43, 240 P. 2d 1109) for the purpose of showing the disqualification of Judge Sullivan in such proceedings; that this defendant was required to and did testify to certain statements and assertions which Judge Sullivan had made in his presence and hearing which tended to show the disqualifications of Judge Sullivan in those two cases, supra, and wherein this court held that Judge Sullivan was disqualified.

No immediate action was taken by Judge Sullivan on this application to disqualify him, but on June 6, 1952, defendant (petitioner herein) through his attorney, by letter advised Judge Sullivan as follows:

"Now since it definitely appears that there can be no settlement of this case by agreement of the parties, I am making this inquiry to ascertain if you care to certify your disqualification in the case without a hearing * * * and I make this inquiry in all deference so that I simply may be advised whether it will be necessary to present our application. In any event it will be appreciated if you will advise me of your wishes in the matter."

A copy of this letter was furnished plaintiff's attorney. There was no response to his letter and though the attorney was in conversation with the judge on two subsequent occasions, he made no reference to the letter, and the attorney, in deference to the position held by Judge Sullivan, made no inquiry himself; that thereafter, on July 12, 1952, the defendant (petitioner) through his attorney, addressed and mailed to Judge Sullivan another letter in which reference to the letter of June 6, 1952, was made, and in which the judge was again advised that no settlement of the case was possible and to inquire the disposition of the judge as to disqualification, and to "certify your disqualification in this case, or require a hearing upon application of Mr. Larecy for your disqualification. We have pending in the case also a motion to modify the order for temporary support and on several dockets I have received from your court since writing my letter of June 6, it has appeared that only this motion (the motion to modify the order for temporary support) in the case has been set. It was my understanding that your next motion docket will occur on Tues-

day, July 22, and if you do not feel you should certify your disqualification without a hearing, we would like to have the application for that purpose on the docket for the 22nd. It will be appreciated if you will advise me of your disposition in this matter." To this communication, Judge Sullivan replied by letter, dated July 14, 1952, addressed to petitioner's (defendant's) attorney, wherein he said:

"My relations with both you and your client have been very amicable, and I have known your client for many, many years, and nothing has ever transpired to divorce my friendship from either of you; and I want to assure you and him that the same friendly relations still exist and will continue to exist insofar as I am concerned. I have set the motion down as per your request for next Tuesday, July 22, 1952, for 9 o'clock A.M. The motion docket will begin at 9 A.M. and presumably it will be about ten o'clock that morning before we reach this case."

On July 17, 1952, without notice to petitioner (defendant) or his attorney of record, Judge Sullivan entered an order (in case No. 18767, supra) directing payment of an additional $500 as attorney's fee for plaintiff's attorney and appointing a receiver with receiver's bond fixed at $5000. The pertinent part of the order reads:

"It is therefore ordered, adjudged and decreed that Leslie J. Graham be appointed receiver for the assets and property of the defendant, Walter J. Larecy and/or Walter J. Larecy d/b/a L & W Supply Company, immediately and without notice, with full authority and direction to take and keep possession of the property of defendant, to receive rents, to collect debts, to compound for and compromise the same, to make transfers and generally to do such other acts respecting the property or any part thereof as the court may authorize."

The petitioner (defendant) alleges that this action, in effect, constituted a denial of petitioner's (defendant's) application for disqualification of Judge Sullivan, and that such action was evidence of (1) a denial of the application for disqualification, (2) conclusive evidence of the bias and prejudice of Judge Sullivan; that such order and judgment affecting petitioner's rights constitutes a trial of issues in the cause contrary to and in violation of the provisions of 22 O. S. 1951 §575; that the application for disqualification having been denied on July 17, 1952, and the application to this court having been made within three days from date thereof, that such action was unauthorized and without judicial power and force; that unless Judge Sullivan and the receiver are prohibited from so doing they will enforce the aforesaid orders.

The petitioner further alleges that the general nature of his business embraced in Judge Sullivan's order appointing said receiver consists of:

"(1) A sales agency for Herd Equipment Company of Oklahoma City, in eleven (11) counties in the State of Oklahoma;

"(2) Local authorized dealer for Ford Tractors and Dearborn Implements;

"(3) Operation of bull-dozier equipment in the digging ponds, moving of dirt, and clearing lands of timber, in which operation two (2) complete bull-doziers are owned and operated.

"(4) Repair shop for repair of heavy-duty road equipment including equipment personally owned, leased, and sold.

"(5) Three (3) trucks and trailors employed in the distribution and delivery of lumber, road machinery parts and road builders supplies to various municipalities in the State of Oklahoma.

"(6) The sale and distribution of road builders parts and supplies.

"(7) A retail parts department.

"(8) A retail filling station as a local Phillip's 66 gasoline dealer;

and that in the operation, management and control of his business he has employed approximately eight (8) regular employees, hiring additional help from time to time as needed.

"This petitioner is required from time to time to finance his operation by borrowing large sums of money; the sale of all equipment to municipalities is made as a matter of necessity on a month to month basis and the bookkeeping incident to the filing and collection of claims for supplies sold to the various municipalities in the State is considerable.

"All of said business requires and demands the constant personal attention and discretion of this petitioner; and to place the same in the charge and control of a total stranger to do the same would amount to and constitute destruction and confiscation of his property without due process of law.

"That to allow even temporary custody to pass from his hands and control will injure his credit and hamper and hinder him in his business relationships, and will destroy the confidence in him of his creditors and the machinery employers, the Ford-Dearborn Company and Herd Equipment Company, and injure and destroy him in his future relationship to them.

" * * *

"Petitioner further alleges that he has, since the commencement of said proceedings for divorce in the District Court of Bryan County, Oklahoma, been perturbed and disturbed over the fact that the plaintiff went to Bryan County immediately upon her separation from him and thereby left her place of residence and took up a residence in Bryan County, and immediately filed said suit; that he has discovered that before leaving Choctaw County, on the date of their separation, she called her attorney in this action at Durant, Oklahoma, and talked to him over Long Distance telephone from Hugo;

"Since making his original application for disqualification of the respondent he has remembered that in the past said plaintiff has been a close friend and political supporter of Honorable Sam Sullivan, Trial Judge; that such support has been not only in behalf of the said Judge, but in behalf of other candidates in which said Judge has been interested, and that upon request of said Judge, she has gone into the field and actively campaigned both for him and other candidates in which said Judge was interested;

"The relationship between them has been so close, that said Judge came to the home of this petitioner and said plaintiff when they lived West of Boswell, and about three (3) miles East of Bryan County, and induced her to go into Bryan County in a political campaign; on numerous occasions she has had in her possession and distributed campaign literature for said Judge; both she and said Judge have attended Democratic conventions at numerous times and on such occasion, this petitioner is informed and believes and therefore alleges that on such occasions they helped to form, and formed numerous coalitions together for the purpose of achieving political aims."

Other allegations are made concerning the belligerence of plaintiff's attorney toward defendant and that such attorney is closely associated with Judge Sullivan, as one of his personal and political advisers, etc.

Judge Sullivan filed his response to the foregoing petition wherein he denied that he is biased and prejudiced against the petitioner and denied generally all the material allegations of the petition, but admitted the pendency of cause No. 18767 in the district court of Bryan county, Oklahoma, and the issuance of the orders complained of by petitioner (defendant); and admitted the filing of the answer and cross-petition, motion to modify order for support money, and verified application for disqualification of him, as alleged by petitioner. However, he denied that no immediate action was taken on the motion for disqualification, and asserted that the application for disqualification and motion to modify order for support money were placed on the docket of May 6, 1952; that both were passed by agreement of counsel for both parties, and that they were set for hearing on May 20, 1952, but upon advice from counsel that negotiations were pending for settlement and that the parties did not desire an immediate

hearing; that following receipt of the letter of June 6, 1952, from petitioner's attorney the application could have been heard on the next motion day, which was June 17, 1952, but that respondent was advised by counsel for petitioner's wife (plaintiff), that negotiations for settlement had been resumed and in the event of settlement it would not be necessary to rule on either the application or motion; that subsequently, by letter dated July 12, 1952, attorney for petitioner (defendant) advised respondent that no settlement could be made and requested the application for disqualification be set for hearing, which was done by setting it down for hearing on July 22, 1952, but that respondent was prevented from hearing it on said date by order of this court issued on July 21, 1952.

The remainder of the response is substantially a reiteration of the separate allegations of the petitioner followed by specific denials.

The gist of this action is to require the district judge to certify his disqualification in this cause because he is so biased and prejudiced against the defendant (petitioner) that he cannot obtain a fair and impartial trial before him and since he has refused to disqualify, petitioner asks for a writ of mandamus to compel him to do so.

Respondent's answer denies that he was prejudiced or biased, or that petitioner would be unable to obtain a fair and impartial trial in this court, and further asserted that he had never refused to disqualify.

Under Okla. Const., art. 2, (Bill of Rights) §6, it is provided:

"The Courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay or prejudice."

And under Okla. Const. art. 7, §2, it is provided that the original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and by reason of these constitutional provisions it becomes the mandatory duty of this court, when its jurisdiction is properly invoked, to see that justice is so administered.

In Heard v. Sullivan, Judge, supra, we said that where there are circumstances of such a nature as to cause doubts as to a judge's partiality, bias or prejudice, it is his duty to disqualify, notwithstanding the fact that he personally believes himself to be unprejudiced, unbiased and impartial.

We are committed to the rule (Okla. Const. art. 2, §6, supra) that every litigant is entitled to nothing less than the cold neutrality of an impartial judge.

As indicated above, respondent contends that he is now biased and prejudiced. Limited to the technical content of the affidavits and exhibits, this view could be upheld and supported but that is not the measure by which they should be evaluated. If taken as a whole, the suggestion of disqualification and supporting affidavits are sufficient to warrant fear on the part of the litigant, relator, that he will not receive a fair trial free of prejudice at the hands of the respondent.

It is the duty of courts to scrupulously guard our constitutional rights to a speedy trial without prejudice, and a judge should refrain from trying to exercise jurisdiction in any matter where his qualification to so do is seriously brought in question. The exercise of any other policy tends to discredit the judiciary and shadow the administration of justice.

To force the petitioner to trial in face of the fear that the suggestions for disqualification warrants would be to impose on him a condition contrary to every principle devised for the administration of justice under our jurisprudence. There may in reality be little

basis for his fear, but if it's there, the renunciation of the trial judge won't efface it.

The judge's action in rendering the orders (as heretofore outlined) on July 17, 1952, while the application for his disqualification was pending, and which had been pending since the 12th day of April, 1952, and which had been placed upon the trial or motion docket by the direction of the judge in compliance with the repeated request of the petitioner's (defendant's) attorney for consideration, or hearing, on July 22, 1952, was in effect a refusal to disqualify and, under the circumstances, an exercise of unwarranted judicial authority.

The writ of mandamus is granted ordering Judge Sullivan to disqualify in the cause, and the writ of prohibition is granted whereby he is prohibited from enforcing the orders made in said cause of July 17, 1952, or exercising any further judicial action in said cause except to certify his disqualification, and the receiver is also prohibited from acting under said order.

ARNOLD, C.J., HALLEY, V. C. J., and CORN, GIBSON, JOHNSON, O'-NEAL, and BINGAMAN, JJ., concur.