Charles Ed WHITE, Plaintiff in Error,

v.

Carrie H. WHITE, Defendant in Error.

No. 36255.

Supreme Court of Oklahoma.

March 1, 1955.

Porter & Porter, Muskogee, for plaintiff in error.

C. A. Ambrister, Muskogee, for defendant in error.

ARNOLD, Justice.

Plaintiff, Carrie H. White, brought suit against her husband, Charles E. White, in the District Court of Muskogee County alleging that defendant without cause or provocation had left the home of the parties and had refused to return, and praying for a division of the jointly acquired property, restoration to plaintiff of her separate property in defendant's hands, and for separate maintenance in a fixed sum per month. She later amended this petition to pray for divorce, division of property, costs and attorney fees.

Defendant filed answer and cross-petition denying the allegations of plaintiff's petition and amended petition alleging gross neglect of duty and extreme cruelty on the part of plaintiff and praying for divorce.

Plaintiff's evidence is to the effect that at the time she married Dr. White in 1923 she was the owner of property of the value of $250,000; that Dr. White was just starting in the practice of medicine in Muskogee and owned no property and had very little income; that she had inherited the property which she owned from her grandparents and that a part of it consisted of real estate from which she derived substantial income, located in Memphis, Tennessee, and in Texas; that during the whole of their married life, up until the time her property became exhausted in about 1943 or 1944, she gave defendant substantial financial assistance and devoted the greater part of her separate property to the maintenance of the family; that two daughters, both now grown, were born to the marriage;

that during the depression some of her real estate holdings became of little value and she was forced to sell them, sustaining a loss of approximately $75,000; that from time to time she had sold the balance of her inheritance, devoting the proceeds therefrom to the maintenance of the family, the purchase of a home, and in loans to defendant to build a clinic; that defendant had purchased and improved a farm, worth $125,000, on which he lived; that defendant owed her $5,000 on the clinic which he had built; that he had in his possession a Government bond of the value of $1,000 which he had used as collateral in obtaining a mortgage on the clinic and which he had refused to return to her; that of her property she has remaining only about $7,-000, from which she receives an income of about $150 per year; that dating from about 1938 defendant had spent more and more time away from his home and on his farm; that on February 1, 1953, he had moved to the farm and had refused to return home; that up until about 1941 she gave defendant at least $6,000 per year, in addition to maintaining herself and daughters; that after 1943, when the last of her inherited property was sold, defendant gave her $37.50 per week allowance on which to buy clothes for herself and daughters and groceries for the family; that in 1949 this allowance was increased to $40 per week; that defendant earns from his practice as an obstetrician approximately $25,000 per year gross.

Defendant's evidence is to the effect that when he and plaintiff were first married he was just starting his practice; that plaintiff during the early years of the marriage spent most of the Christmases with her father and mother in Memphis, taking the children with her; that plaintiff had business interests in Memphis which required her personal attention at intervals during the early years of the marriage; that she had not been back to Memphis for Christmas since her father died nine years ago; that plaintiff had advanced him money from time to time; that he owed plaintiff $5,000 on money advanced by her to build his clinic; that he has gross receipts from his practice of around $25,000 to $30,000 per year and a net income of from $8,000 to $9,000; that he had written different business concerns to the effect that he and his wife kept separate bank accounts and not to send her bills and those of his daughters to him; that he gave them an allowance which was supposed to pay all such bills; that his wife had never wanted children and had resented her first pregnancy; that she feared pregnancy; that after the birth of the first child she waited five years to have another; that sexual relations were distasteful to her and he had abandoned such relations some nine years before; that plaintiff disliked the farm, which defendant enjoyed, and refused to live there or share it with defendant; that most of their troubles had been over money; that plaintiff loved and provided for the children and was economical in running the household.

Plaintiff on rebuttal denied that she had not wanted children, denied that her husband had ever expressed a wish to have more children.

After both parties had introduced their evidence and rested defendant filed a motion to disqualify the trial judge alleging bias and prejudice. This motion was overruled. Thereafter the court found that the allegations and evidence of plaintiff were not sufficient to entitle her to a divorce; that the allegations and evidence of defendant were not sufficient to entitle him to a divorce; that defendant should pay plaintiff as alimony without divorce the sum of $30,000, payable $250 monthly, and that said sum should be secured by a lien on the 537-acre farm owned by defendant; that defendant should make plaintiff the beneficiary of $10,000 of the $25,000 insurance carried by him on his life, waiving any right to change beneficiary; that defendant was indebted to plaintiff in the sum of $5,000 and that said sum should be made a lien on the clinic building owned by defendant; that defendant should return to plaintiff the $1,000 Government bond which he had used as collateral in borrowing money from the bank; that plaintiff should be decreed the home and furnishings in Muskogee and the automobile and defendant should be decreed the 537-acre farm and improvements, subject to the $30,000

lien in favor of plaintiff; that defendant should be decreed his automobile and his clinic, subject to the lien of $5,000 owed plaintiff, and that plaintiff's attorney was entitled to a fee of $1,000, and rendered judgment in accordance with such findings.

After judgment was entered in this cause and order overruling motion for new trial was entered, defendant made application to this court for writ of mandamus commanding the trial judge to set aside his judgment theretofore rendered, enter his disqualification, and grant a new trial, being cause No. 36,185, White v. Stewart. After hearing this court entered its order refusing to accept jurisdiction. Defendant now urges that the trial judge showed bias and prejudice in remarks made at the conclusion of the trial and that his failure to disqualify when requested to do so is reversible error.

■■ Regardless of whether the remarks made by the judge did or did not show bias and prejudice, in a divorce case, such as this, this court will weigh the evidence and if the judgment rendered is just and equitable will affirm the judgment; if not just and equitable, this court will render or cause to be rendered a proper judgment. Pope v. Pope, 116 Okl. 188, 243 P. 962; Cornelius v. Cornelius, 82 Okl. 195, 199 P. 1115.

Defendant claims that his evidence is sufficient to show extreme mental cruelty and gross neglect of duty on the part of plaintiff and therefore the finding of the court that his evidence was not sufficient to entitle him to a divorce was error.

■ If the evidence of defendant is not sufficient to show conduct on the part of plaintiff amounting to extreme cruelty and gross neglect of duty on her part then the court had no alternative except to deny the divorce. We held in Hornor v. Hornor, 151 Okl. 292, 3 P.2d 670, 671, that "extreme cruelty" as a ground for divorce means more than indifference, neglect, or incompatibility of tastes or temperament or estrangement produced by differences of opinion and conduct growing out of the administration of household affairs, and that "gross neglect of duty" is such a glaring, shameful, or monstrous neglect from marital duties as to be obvious from the common understanding and inexcusable under all the relevant facts in the case. The evidence of defendant does not meet these tests, and judgment of the trial court is correct.

■ Even were we to concede for the sake of argument that defendant did show sufficient grounds for divorce, under 12 O.S.1951 § 1275, the court may refuse a divorce in its discretion where the petitioner therefor is not free from blame, Lyon v. Lyon, 39 Okl. 111, 134 P. 650. The evidence is sufficient to show that defendant was not free from blame and the court's refusal to grant him a divorce is not an abuse of discretion.

Defendant does not contend that the court had no power to make a property settlement between the parties while denying divorce to both parties. He does contend that while he is willing to pay $40 per week toward plaintiff's maintenance as long as he is able, he does not think he should be compelled to "anything like what is called for by the judgment of the court."

■ Considering all the factors here involved, the age of the parties, the length of the marriage, the amount contributed by each for the maintenance of the family over the years, the properties accumulated during the marriage, and the earning power of the husband the property division appears to be very fair and equitable.

The judgment of the trial court is not clearly against the weight of the evidence.

Affirmed.

WILLIAMS, V. C. J., and CORN, HALLEY and JACKSON, JJ., concur.