2001 OK 97

**Anne PIERCE, Appellant,**

v.

**Gene O. PIERCE, Appellee.**

**No. 93,764.**

Supreme Court of Oklahoma.

Nov. 13, 2001.

As Corrected Nov. 21, 2001.

As Modified Nov. 27, 2001.

Rehearing Denied Jan. 8, 2002.

Arnold D. Fagin, Tracy Cotts Reed, Fagin, Fagin, Nixon & Reed, P.C., Oklahoma City, for Appellant.

R. Scott Adams, Adams & Associates, Oklahoma City, for Appellee.

SUMMERS, J.

¶ 1 Plaintiff Anne Pierce argues that the trial judge should have certified his disqualification because Defendant's counsel and counsel's father each gave $5,000 to the judge's campaign, and counsel solicited other campaign contributions on the judge's behalf while the case was pending before the judge. We hold that the record is sufficient to show that the judge should have disqualified. Defendant's counsel failed to show that his campaign efforts on behalf of the judge were minimal in comparison to the total amount raised and number of people soliciting funds on the judge's behalf.

¶ 2 The trial judge assigned to adjudicate the Pierce divorce was a candidate for District Judge while the divorce proceeding was pending. Plaintiff sought to disqualify the trial judge on the basis that counsel for Defendant and counsel's father each contributed $5,000.00 to the judge's campaign while

the divorce was pending. She further stated that Defendant Gene O. Pierce had communicated to her that she would not win in the custody dispute involving their child. The trial judge denied the *in camera* request to disqualify.

¶ 3 Plaintiff re-presented her motion to the Chief Judge. At the hearing on that motion Defendant's counsel admitted his donation to the campaign and stated that "[p]eople that I have solicited have donated money, including my father...." No further facts were presented on the degree or nature of counsel's solicitation of funds on behalf of the trial judge. The Chief Judge declined to require disqualification.

■ ¶ 4 On appeal the Court of Civil Appeals determined that a trial judge's error in not certifying his or her disqualification should be reviewed first in the trial court pursuant to District Court Rule 15, and then by the Supreme Court on an application for mandamus. It stated that when a party does not seek extraordinary relief the alleged error of a judge declining to disqualify is not reviewed on a subsequent appeal unless public policy demands the disqualification. We vacate the opinion of the Court of Civil Appeals, hold that the plaintiff preserved the disqualification error for review on appeal, and that the trial judge should have disqualified.

## I. Disqualification Procedure

¶ 5 The first question presented is whether a party must bring an application for mandamus in this Court to challenge a judge's decision that denies a party's application to disqualify the judge. District Court Rule 15 specifies the procedure for disqualifying trial court judges.

Rule 15. Disqualification of Judges in Civil and Criminal Cases.

a. Before filing any motion to disqualify a judge, an in camera request shall first be made to the judge to disqualify or to transfer the cause to another judge. If such request is not satisfactorily resolved, not less than ten (10) days before the case is set for trial a motion to disqualify a judge or to transfer a cause to another judge may be filed and a copy delivered to the judge.

b. Any interested party who deems himself aggrieved by the refusal of a judge to grant a motion to disqualify or transfer a cause to another judge may re-present his motion to the Chief Judge of the county in which the cause is pending or, if the disqualification of a Chief Judge is sought, to the Presiding Judge of the administrative district by filing in the case within five (5) days from the date of said refusal a written request for re-hearing. A copy of the request shall be mailed or delivered to the Chief Judge or Presiding Judge, to the adverse party and to the judge who entered the original order. If the hearing before the second judge results in an order adverse to the movant, he shall be granted not more than five (5) days to institute a proceeding in the Supreme Court or the Court of Criminal Appeals for a writ of mandamus. Neither the Supreme Court nor the Court of Criminal Appeals will entertain an original proceeding to disqualify a judge or to direct a judge to transfer a cause to another judge unless it is shown that the relief sought was previously denied by the judge to whom the matter was re-presented in accordance with this rule. An order favorable to the moving party may not be reviewed by appeal or other method.

c. An original proceeding in mandamus to disqualify a judge in a civil action or proceeding shall be brought in the Supreme Court; an original proceeding in mandamus to disqualify a judge in a criminal case or proceeding shall be brought in the Court of Criminal Appeals. If mandamus is not brought in the appellate court designated as proper by this rule, the case will be transferred to the proper court either on motion or sua sponte. Art. VII, §§ 4 Okla. Const.

12 O.S.1991 Ch. 2, App. 1, Rule 15.

■ Rule 15(c) covers "an original proceeding in mandamus to disqualify a judge in a civil action." This language identifies the court in which to seek extraordinary relief in civil and criminal actions, but does not *re-*

*quire* that mandamus be sought in one of the supervisory courts.

¶ 6 The rule-mandated procedure works with the statutory procedure for disqualification.

§ 1403. Disqualification of judge, claim of—Mandamus

Any party to any cause pending in a court of record may in term time or in vacation file a written application with the clerk of the court, setting forth the grounds or facts upon which the claim is made that the judge is disqualified, and request said judge so to certify, after reasonable notice to the other side, same to be presented to such judge, and upon his failure so to do within three (3) days before said cause is set for trial, application may be made to the proper tribunal for mandamus requiring him so to do.

*20 O.S.1991 § 1403.*

A review of the history of § 1403 shows its mandatory and discretionary elements.

¶ 7 The original purposes of § 1403 were to provide a procedure for parties to avoid a trial before a disqualified judge, and to create a court record on the disqualification issue so that the jurisdiction of the replacement judge would appear on the face of the record. *Ex parte Hudson,* 1910 OK CR 3, 3 Okla.Crim. 393, 107 P. 735, 737, and 3 Okla. Crim. 393, 106 P. 540, 544. That court also noted that the statute was created to correct the practice of disqualifying a judge upon a mere affidavit after a case had been called for trial, because abuse of that procedure had "thrown into confusion" the business of the court. *Ingles v. McMillan,* 1911 OK CR 5, 5 Okla.Crim. 130, 113 P. 998, 1000, *Lewis v. Russell,* 1910 OK CR 4, 4 Okla.Crim. 129, 111 P. 818, 819.

¶ 8 We have explained that since the adoption of § 1403 [1] where a party had knowledge of the alleged grounds of the disqualification of the trial judge for more than three days prior to the trial, and that party did not use the procedure prescribed by that section, the party cannot urge the disqualification on appeal, or in a collateral attack, on the judgment rendered and orders made by said judge. *State ex rel. Dabney v. Ledbetter,* 1932 OK 229, 156 Okla. 23, 9 P.2d 728, 729, *quoting, Holloway v. Hall,* 1920 OK 287, 79 Okla. 163, 192 P. 219, 220.[2] Thus, when the statute states that a party "may" file a written application with the court clerk to disqualify a judge the language is permissive in the sense that a party may or may not file the application, but if a party seeks judge disqualification we have held that filing the statutory application is mandatory.[3]

¶ 9 Our opinions indicate that when the procedure in § 1403 is followed a party may raise the disqualification issue on a subsequent appeal. Does the term "may" in the language "application may be made to the proper tribunal for mandamus" allow a party the option of raising the disqualification issue on appeal instead of by mandamus, or is "may" used in the same way as in the language stating that a party "may" file a written application for disqualification with the court clerk? The published opinions of this Court indicate the former, i.e., that a mandamus proceeding is not *required.*

We have stated:

The procedure, under proper circumstances, may be by mandamus, or the party may object and save his exceptions to the overruling of his petition for disqualification and proceed with his cause, and thus save the question for review. In any

---

1. Section 1403 was originally enacted by Sess. Laws 1909, Ch. 14, Art. 1 § 5 (eff. June 10, 1909) and subsequently codified at: Comp. Laws 1909, § 2016; Rev. Laws 1910 § 5816; C.O.S.1921 § 2633; 1931 O.S. § 2915; 22 O.S.1941 (1951 & 1961) § 575; and renumbered in 1969 to *20 O.S.Supp.1969 § 1403.*

2. *See also, Myers v. Bailey,* 1910 OK 106, 26 Okla. 133, 109 P. 820, 821, (a party must file a proper application for disqualification in the trial court prior to raising the issue by either appeal or petition for extraordinary relief); *Fox v.*

*Ziehme,* 1911 OK 501, 30 Okla. 673, 120 P. 285, 288, (same); *Prowant v. Sealy,* 1919 OK 304, 77 Okla. 244, 187 P. 235, 242, (statutory procedure is an adequate trial court remedy and a disqualification complaint upon appeal will not be heard if the judge was not requested to disqualify).

3. The term "may" is usually construed to imply permissive or discretionary conduct, as opposed to creating a mandatory requirement. *G.S. v. Ewing,* 1990 OK 1, 786 P.2d 65, 72.

event, the complaining party must proceed by application to the court as provided by statute, supra. If this is not done the litigant is deemed to have waived the question (*State ex rel. Attorney General v. Davenport*, [1927 OK 137] 125 Okl. 1, 256 P. 340), unless the circumstances are such that the demands of public policy would require disqualification. In such case the parties may not waive the disability.

*In re Miller's Estate*, 1938 OK 289, 182 Okla. 534, 78 P.2d 819, 822, citation added.

*Miller's Estate* indicates that after a party preserves the disqualification issue in the trial court the alleged error may be raised by a mandamus proceeding *or* in a subsequent appeal. See also *Jones v. Cabaniss*, 1939 OK 122, 185 Okla. 237, 90 P.2d 650, 651, where we stated that a party "was authorized to proceed by mandamus or to present his defense and preserve his rights throughout the trial." *Accord, Morissette v. Musgrave*, 1940 OK 486, 188 Okla. 222, 108 P.2d 123, 125, *quoting, Jones v. Cabaniss, supra*. This concept was subsequently cited in *Graham v. Graham*, 1967 OK 210, 434 P.2d 245, where the party did not bring a mandamus proceeding, and we concluded that the party failed to show that the trial court abused its discretion in refusing to disqualify.

¶ 10 We conclude that a party seeking disqualification of a judge in a civil proceeding must make an *in camera* request of the judge to disqualify or to transfer the cause to another judge as required by Rule 15, and then upon the judge's refusal the party must file a written application in the cause, as required by § 1403, and upon refusal of the motion,[4] re-present the motion to the Chief Judge or the Presiding Judge as required by Rule 15. We also conclude that if the judge is not then disqualified as requested, the party seeking disqualification may seek extraordinary relief in the form of mandamus as authorized by Rule 15 and § 1403, or as an alternative to a mandamus proceeding,

preserve the disqualification issue for review on appeal from the subsequent judgment. *In re Miller's Estate, supra. Accord, Harmon v. Harmon*, 1997 OK 91, n. 3, 943 P.2d 599, 603, (original proceeding to disqualify judge converted to an appeal).

¶ 11 In our case today an application was filed in the trial court and the issue was re-presented as required by Rule 15. We need not address those factual circumstances where failure to follow the rule is legally excused or when the nature of the disqualification involves public policy that may be raised on appeal although not previously raised in the trial court.[5]

## II. Campaign Contribution and Solicitation of Campaign Contributions

¶ 12 Some courts have determined that lawyers' contributions to judicial campaigns are normal incidents to the campaigns, and the contributions do not indicate any closer relation between the contributors and the recipients than would ordinarily exist between members of the same local bar. *MacKenzie v. Super Kids Bargain Store, Inc.*, 565 So.2d 1332, 1338 (Fla.1990), *quoting, Frade v. Costa*, 342 Mass. 5, 171 N.E.2d 863, 865 (1961). However, the *MacKenzie* court noted that a lawyer's contribution in conjunction with an additional factor, such as the lawyer serving as co—chair of the trial judge's judicial election campaign which was ongoing at the time of the underlying lawsuit, may require a judge to disqualify. *MacKenzie v. Super Kids Bargain Store, Inc.*, 565 So.2d at n. 5, 1338. See also *Aetna Casualty and Surety Co. v. Berry*, 669 So.2d 56, 79 (Miss.1996), where the court required disqualification when a lawyer had formerly represented the judge and was acting as a spokesman for the judge's campaign during the decisional period of the litigation. Another court has distinguished ongoing per-

---

4. The judge's refusal must be made a part of the trial court record. *Clark v. Board of Education of Independent School District No. 89 of Oklahoma County*, 2001 OK 56, ¶ 7, 32 P.3d 851 (mandate issued October 12, 2001).

5. *See, e.g., State ex rel. Dabney v. Ledbetter*, 1932 OK 229, 156 Okla. 23, 9 P.2d 728, 730, (Court stated that where the disqualification of a judge is considered a matter of public policy, a waiver will not be allowed, and the judge is not authorized to sit in a case even with the consent of the parties).

sonal relationships and those in the past, and declined to require disqualification when the lawyer was the judge's campaign manager six years prior to the complaint. *Gluth Bros. Constr. Co. v. Union Nat. Bank*, 192 Ill. App.3d 649, 139 Ill.Dec. 650, 548 N.E.2d 1364, 1368 (1989).

■ ¶ 13 A judge "should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned...." 5 O.S.Supp.2000, Ch. 1, App. 4, Code of Judicial Conduct, Canon 3(E)(1).[6] We have said that when circumstances and conditions surrounding litigation are of such a nature that they might reasonably cast doubt and question as to the impartiality of any judgment the trial judge may pronounce, said judge should certify his or her disqualification. *Johnson v. Board of Governors of Registered Dentists of State of Oklahoma*, 1996 OK 41, ¶ 32, 913 P.2d 1339, 1348, *quoting, Sadberry v. Wilson*, 1968 OK 61, ¶ 12, 441 P.2d 381, 384. We have also said that in disqualification proceedings the courts must be sensitive to the appearances of possible impropriety as well as to actual occurrences. *Holloway v. Hopper*, 1993 OK 56, 852 P.2d 711, 713. The question of a judge's appearance of impartiality is determined by an objective standard. *Johnson v. Board of Gov-*

*ernors of Registered Dentists of State of Oklahoma*, 1996 OK 41, 913 P.2d at 1348.

¶ 14 May a trial judge's impartiality be reasonably questioned when that judge receives campaign contributions and campaign assistance from a lawyer during litigation where that lawyer is appearing before that judge? We have required a judge to disqualify when one of the parties to an action had previously distributed the judge's campaign literature, actively campaigned for the judge and other candidates on behalf of the judge, and had previously attended political conventions with the judge. *State ex rel. Larecy v. Sullivan*, 1952 OK 290, 207 Okla. 128, 248 P.2d 239, 243. The Oklahoma Judicial Ethics Advisory Panel has issued an advisory opinion stating that a lawyer's campaign assistance of a minimal nature and a campaign contribution of $50 for a judge's campaign do not require that judge to disqualify when the lawyer subsequently appears before the judge. 2001 OK JUD ETH 5.[7] We also note that a judge or judicial candidate should not personally solicit campaign funds, but instead relies upon committees of responsible persons acting on behalf of the judge or candidate. 5 O.S. Supp.1998, Ch. 1, App. 4, Code of Judicial Conduct, Canon 5(C)(2).[8] We

6. 5 O.S.Supp.2000, Ch. 1, App. 4, Code of Judicial Conduct, Canon 3(E):

E. Disqualification.

(1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;

(c) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or has an interest more than de minimis that could be substantially affected by the proceeding;

(d) The judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person;

(i) is a party to the proceeding, or an officer, director or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have an interest more than de minimis that could be substantially affected by the proceeding;

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

(2) A judge shall keep informed about the judge's personal and fiduciary economic interests, and make a reasonable effort to keep informed about the personal economic interests of the judge's spouse and minor children residing in the judge's household.

7. That same Ethic's Panel advisory opinion, issued after the ruling in question here, goes on to say "As to a large donation (such as $5,000.00) we suggest the judge should recuse without a request from counsel for at least a year after the campaign."

8. Canon 5 was amended effective October 5, 1998. The trial judge ruled upon the motion to disqualify on May 22, 1998. Canon 7(B)(2) in effect at that time stated, in part, that: "A candidate, including an incumbent judge, for a judicial office that is filled by public election between

make reference to this Canon not for the purpose of showing that any violation occurred, but to illustrate the importance our Code of Judicial Conduct gives to the solicitation of judicial campaign funds. We further note that during the time at issue campaign contributions to judge were statutorily limited to $5,000. *21 O.S.Supp. 1997 § 187.1.* Similarly, the rules of the Ethics Commission limited certain campaign contributions to $5,000 per family. 74 O.S.Supp.1997 & 1998, Ch. 62, App., Rule 257:10-1-2.

¶ 15 In our case today, counsel and counsel's father each contributed $5,000 to the trial judge's campaign during the litigation and prior to trial. We are not provided with any evidence in the record to show whether this $10,000 represented a significant portion of the judge's total campaign contributions. We are not told whether these two contributions were the only contributions in this maximum amount, or whether the timing of the contributions is of special significance. We are told that counsel solicited other contributions for the judge's campaign, but we are not told the amount of these contributions or the manner in which the solicitations were made.

¶ 16 We agree with the Oklahoma Judicial Ethics Advisory Panel that the mere fact of a lawyer's contribution to a judge's campaign does not *per se* require that judge's disqualification when the lawyer comes before him. But we are of the opinion that a judge's "impartiality might reasonably be questioned" when, as in this case, (1) a lawyer makes a campaign contribution to that judge in the *maximum* amount allowed by statute, and (2) a member of that lawyer's *immediate family* makes a *comparable maximum* contribution, and (3) that lawyer *further assists* the judge's campaign by soliciting funds on behalf of the judge, and the contributions and solicitations occur during a pending case in which the lawyer is appearing before that judge. If the party resisting the motion to disqualify chooses to defend the motion by showing that the contributions and solicitations were a minimal part of the judicial campaign then facts to that effect

should be made part of the record. A party opposing a claim or cause of action may provide evidence for the purpose of denying one of the elements to that claim or cause of action. *Long v. Ponca City Hospital, Inc.,* 1979 OK 32, 593 P.2d 1081, 1087. Such evidence is not before us, and we conclude that upon the facts of this case the plaintiff sufficiently showed that the trial judge should have disqualified.

### III. Due Process and an Appellate Remedy

¶ 17 Not all questions of judicial qualification involve constitutional validity. *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 820, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). But there is no doubt that due process is violated if a judge has a "direct, personal, substantial pecuniary interest" in the proceedings or when a judge has responsibilities over a party independent of any judicial duties and the judge then acts as a decisionmaker in litigation involving that party. *Bushert v. Hughes,* 1996 OK 21, n. 21, 912 P.2d 334, 338, *citing, Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) and *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Alpha Epsilon Phi Tau Chapter Housing Association v. City of Berkeley,* 114 F.3d 840, 844 (9th Cir.1997). The record does *not* show any direct, personal, substantial pecuniary interest of the judge in the proceedings. Neither does the record show any actual bias by the judge.

¶ 18 Due process jurisprudence includes the concept of the *appearance* of a fair trial. The High Court has explained that the reach of due process jurisprudence requires not only a fair tribunal, but also the *appearance* of a fair tribunal. *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Due process "preserves both the appearance and reality of fairness, 'generating the feeling, so important to a popular government, that justice has been done,' ... by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that

competing candidates, should not himself solicit campaign funds, but he may establish commit-

tees of responsible persons to secure and manage the expenditure of funds for his campaign."

the arbiter is not predisposed to find against him." *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980), *quoting, Joint Anti—Fascist Committee v. McGrath,* 341 U.S. 123, 172, 71 S.Ct. 624, 649, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). That Court has stated that " 'justice must satisfy the appearance of justice,' and this 'stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties,'...." *Marshall,* 446 U.S.at 243, 100 S.Ct. 1610, *quoting, Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954), and *In re Murchison,* 349 U.S. at 136, 75 S.Ct. 623. *See also, Mayberry v. Pennsylvania,* 400 U.S. 455, 465, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).

¶ 19 The common law contains a presumption that a judge is not biased, and a party must point to some fact to overcome the presumption to require disqualification because of bias. *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. at 820, 106 S.Ct. 1580, *quoting,* 3 W. Blackstone, *Commentaries* *361. *Accord, Carter v. State,* 1994 OK CR 49, 879 P.2d 1234, 1242, (There is a presumption of impartiality on the part of judges as to matters before them, and to make a claim of judicial bias a party must demonstrate some prejudice which denied him or her due process or fundamental fairness). Similarly, a party must point to some fact to substantiate a claim that the appearance of a fair trial is not present, or that the judge's impartiality might reasonably be questioned. We conclude that due process must include the right to a trial without the *appearance* of judge

partiality arising from counsel's campaign contributions and solicitation of campaign contributions on behalf of a judge during a case pending before that judge.[9]

¶ 20 What is the appropriate appellate remedy for the error of a trial judge in refusing to disqualify in a divorce proceeding where the appearance is that the judge's impartiality might reasonably be questioned? Characterizing the error to disqualify as a violation of due process shows that the decree must be reversed. We have indicated in a divorce case that we would affirm a decree if it was just and equitable even if a trial judge showed bias. *White v. White,* 1955 OK 56, 281 P.2d 745, 748. On the other hand, we have said that a party is entitled to reversal of a proper judgment when the judge was statutorily required to disqualify. *Hill v. Hill,* 1950 OK 183, 203 Okla. 260, 220 P.2d 450, 451. *White* treats a judge-disqualification as a type of error subject to a form of harmless-error analysis, while *Hill* treats the error similar to a fundamental error where prejudice need not be shown.[10] *Hill* is the proper example for our case today. Violations of some constitutional rights, because of their importance to a fair trial, are *not* treated, as a matter of law, as harmless error. *Satterwhite v. Texas,* 486 U.S. 249, 256, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988); *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967).[11] Some rights are "too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice resulting from [their] denial." *Glasser v. U.S.,* 315 U.S. 60, 75, 62 S.Ct. 457, 86 L.Ed. 680 (1942) (referring to the right of effective assistance

---

9. We do not hold that due process is violated in every case where counsel makes a campaign contribution and solicits funds on behalf of a judge during a pending matter. However, where such appearance of partiality is shown the party opposing that claim may provide evidence for the purpose of denying that appearance of partiality. *Long v. Ponca City Hospital, Inc., supra.*

10. *See, e.g., Walker v. American Ins. Co.,* 1927 OK 471, 128 Okla. 132, 261 P. 918 (when reviewing a claim of an erroneous jury instruction a judgment is not disturbed if the error is harmless); *Waggoner v. Town & Country Mobile Homes, Inc.,* 1990 OK 139, 808 P.2d 649, 657, (error in an instruction will be deemed harmless unless it is a

substantial violation of a fundamental constitutional or statutory right or resulted in a miscarriage of justice).

11. Of course, whether a particular fundamental right is violated may, in some circumstances, be defined by using a standard that examines the prejudice, impact, or affect upon those claiming such status. *See, e.g., Glover v. U.S.,* 531 U.S. 198, 202–203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001), (Court discussed the prejudice prong of a Sixth Amendment ineffective assistance of counsel claim); *City of Edmond v. Wakefield,* 1975 OK 96, 537 P.2d 1211, 1213, (substantive due process standard includes an analysis of the reasonableness of the "impact" upon those affected).

of counsel, and citing in its support *Tumey v. Ohio*, 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749.) We have noted that the appearance of justice is often as important as the proper administration of justice. *Lewis v. Arbuckle Wilderness, Inc.*, 1988 OK 104, 763 P.2d 90, 91. Campaign contributions and solicitation of contributions of funds for judges by lawyers appearing before those judges in such amounts as to give off an appearance of partiality is not the type of error to which this Court will apply a harmless error standard.

¶ 21 When an order of a judge in a civil proceeding denies a disqualification application that order will not be reversed on appeal unless a clear abuse of discretion is shown. *Graham v. Graham*, 1967 OK 210, 434 P.2d 245, 246; *Merritt v. Hunter*, 1978 OK 18, 575 P.2d 623, 624. Generally, a clear abuse of discretion occurs when the decision challenged is against, or not justified by, reason and evidence. *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194; *Abel v. Tisdale*, 1980 OK 161, ¶ 20, 619 P.2d 608, 612. We conclude that the orders declining to disqualify the trial judge are contrary to our precedent and the evidence in the record.

¶ 22 Plaintiff raises the disqualification issue on appeal and on certiorari. Her appellate brief challenges the child custody determination, the court's order suspending husband's support obligation for a period of time, and the trial court's order that each party pay his or her own attorney's fees. Her brief does not specifically challenge the granting of the divorce. Both parties petitioned for divorce in the trial court, and the court granted a divorce to each party.

¶ 23 Generally, the judgment of a court rendered by a disqualified judge is not void, but voidable error, and the right to disqualify the judge is a personal privilege that may be waived. *Collins v. Mid—Continent Pipeline Co.*, 1999 OK 56, ¶ 7, 6 P.3d 1050, 1052; *State v. Davenport*, 1927 OK 137, 256 P. 340, 345; *Holloway v. Hall*, 1920 OK 287, 79 Okla. 163, 192 P. 219, 220. We need not discuss today those circumstances where public policy requires disqualification when the party has waived the issue. This is so because of the policy expressed in *43 O.S. 1991 § 127*:

§ 127. Time when judgments in divorce actions become final—Effect of appeal

Every decree of divorce shall recite the day and date when the judgment was rendered. If an appeal be taken from a judgment granting or denying a divorce, that part of the judgment does not become final and take effect until the appeal is determined. If an appeal be taken from any part of a judgment in a divorce action except the granting of the divorce, the divorce shall be final and take effect from the date the decree of divorce is rendered, provided neither party thereto may marry another person until six (6) months after the date the decree of divorce is rendered; that part of the judgment appealed shall not become final and take effect until the appeal be determined.

This statute separates that part of the decree that grants the divorce from other parts for the purpose of the effect of an appeal. *Wilks v. Wilks*, 1981 OK 91, 632 P.2d 759, 761. In *Harmon v. Harmon*, 1997 OK 91, 943 P.2d 599, we also treated marital status different from other claims in matrimonial litigation. Therein a party raised a disqualification issue on appeal and we determined it was moot because the trial judge was no longer a judge of the District Court. *Id.*, 1997 OK 91, 943 P.2d 599, at n. 5. Both parties in *Harmon* requested divorce, and in reversing the judgment in part we said that: "We, therefore, can see no harmful error in upholding the trial court's granting of a divorce based on the counterclaim as it concerns the parties' status and the dissolution of the marriage." *Harmon v. Harmon*, at ¶ 17, 943 P.2d at 605. In other words, where both parties sought dissolution of the marital status and neither appealed that issue, we left intact the status created by the divorce decree although the disqualification issue was not resolved on the merits. Similarly, we reverse the judgment of the trial court, except as to the parties' status as being divorced. That part of the divorce decree granting both parties a divorce is left undisturbed by our opinion herein.

## IV. Appellate Attorney's Fees

¶ 24 Plaintiff requests appellate attorney's fees. The right to appellate attorney's fees for matrimonial litigation is determined by this Court as part of the appeal. *Chamberlin v. Chamberlin,* 1986 OK 30, 720 P.2d 721, 727–728. Therein we commented on 12 O.S. § 1276, (now codified at *43 O.S. 1991 § 110*) and said that

A § 1276 counsel fee award does not depend upon the claimant's status as a prevailing party. Where sufficient funds and property are available to pay counsel fees, each party should bear its own litigation expense.

*Id.,* 1986 OK 30, at n. 31, 720 P.2d at 727. The record shows that Plaintiff's monthly income was $1789.00 while Defendant's was $3333.00, and Plaintiff points to this fact in her brief. Plaintiff's brief requests that the appellate court engage in "balancing of the equities" in awarding an appellate attorney's fee.

¶ 25 We decline to award appellate attorney's fees to either party. *Chamberlin* requires us to examine the availability of funds and property of each party. *Id.* This requires the parties, in their application for attorney's fees, to point to those facts showing that equity requires one party to pay the other party's attorney's fees. The fact of income, by itself, is thus usually insufficient to show that equity requires one party to bear the cost of appellate attorney's fees. Neither party to the appeal has made the required showing, and both Plaintiff's and Defendant's requests for appellate attorney's fees are denied.

¶ 26 The opinion of the Court of Civil Appeals is vacated. The divorce decree of the District Court is affirmed in part and reversed in part, and the matter remanded to that court for further proceedings consistent with this opinion.

¶ 27 HODGES, LAVENDER, OPALA, KAUGER, SUMMERS, BOUDREAU, JJ., Concur.

¶ 28 HARGRAVE, C.J., WATT, V.C.J., WINCHESTER, J., Concur in part, dissent in part.

WINCHESTER, J., concurs in part, dissents in part:

¶ 1 I concur in that portion of the majority opinion which clarifies the procedural issues under a Rule 15 disqualification. I dissent to that portion of today's pronouncement (*see* ¶ 16) which would *ipso facto* disqualify a judge merely because one of the lawyers appearing before the court contributed to the judge's campaign. The issue of possible bias based upon a campaign contribution is only one element to be considered, but the majority's opinion sets a new standard whereby making a legal campaign contribution alone can cause a judge to be disqualified.

¶ 2 The citizens of Oklahoma have chosen public elections as the method to hold judges accountable. The rules governing judicial campaign contributions are clear and contribution records are open to the public. Canon 5(C)(2) of the Code of Judicial Conduct, codified at 5 O.S.Supp.2000, Ch. 1, App. 4, prohibits a judicial candidate from personally soliciting campaign contributions and provides a campaign committee may solicit and/or accept contributions and public support no earlier than 90 days before an election filing period and no later than 30 days after the last election. The legislature has clearly limited an individual or family contribution to a maximum $5,000.00. *See 21 O.S.Supp.2000, § 187.1* (A). In addition, "family" is defined in the previous section, § 187(9), to mean "an individual, his or her spouse, if any, and all children under the age of eighteen (18) years residing in the same household." Campaign contributions may not be used for the private benefit of the candidate or others. Thus, the system contains safeguards to insulate the judge from contributions and provides the means for a judicial candidate to inform voters of his or her qualifications so they can make an informed choice.

¶ 3 The majority's holding is based upon the inaccurate presumption that a campaign contribution from an attorney, limited by statute to $5,000.00 maximum, will "bank" judicial influence in a judicial race that costs as much as $100,000.00. The fallacy in this presumption is self-evident. The majority's

opinion creates uncertainty for bench and bar that potentially could lead to an administrative quagmire in the state's metropolitan counties and an administrative shut down in non-metropolitan counties, particularly those that have only one associate district or a limited number of judges in a district. Attorneys frequently contribute to each candidate. I would not presume prejudice on the judiciary nor presume the bar was responding other than as dictated by the elective process set by the citizens and the legislature. The reality is, most judges would go to great lengths to be fair to both parties.

¶4 The majority's pronouncement creates uncertainty in other areas of social and civic activity between bench and bar. It opens the door for the creative lawyer to contribute to a judge's campaign knowing he can have the judge disqualified when convenient. This rule creates a new way to forum shop. I dissent.

WATT, V.C.J., concurs in part, dissents in part:

¶1 I concur in that portion of the majority opinion which clarifies the procedural issues under a Rule 15 disqualification.

¶2 I dissent to that portion of today's pronouncement (see ¶16) that would *ipso facto* disqualify a judge merely because one (or both) of the lawyers appearing before the court contributed to the judge's campaign.

¶3 This case presents a prime example of an inherent problem in the election process for our trial court judges who must stand for reelection on a non-partisan ballot and seek campaign contributions to remain on the bench.

¶4 As one who has in the past been involved in the reelection process, I feel sure that a large majority of the attorneys who practice in the 7th Judicial District (and all other districts across this State) will contribute to each candidate in any contested judicial race.

¶5 Today's pronouncement could have the practical effect of making every judge who stood for reelection in a contested race subject to automatic disqualification in a vast majority of the cases to come before that judge during his or her term of office.

¶6 This would create a log jam in an already crowded docket, delay adjudications, and indeed deny due process to the litigants. Had the trial judge in this case recused himself based on the contribution issue alone (which this opinion will mandate in the future)-astute lawyers would thereafter get copies of campaign contribution forms from the State Ethics Commission and stand ready to invoke Rule 15 in all future cases where opposing counsel was a campaign contributor and thereby create a "forum shopping process" which would only cause further delay and which makes the "cure" as bad as the "condition", it is intended to treat.

¶7 Whether the current method of electing our trial court judges remains or is modified is up to the citizens of this State. The inherent problem of campaign contributions while not one which the candidate for judicial office has created but will remain as long as the current system exists and will be excerbated by today's pronouncement.

¶8 Here, the trial judge felt that he could proceed and be impartial and the chief judge agreed.

¶9 Accordingly, I respectfully dissent from that part of today's holding which would require the trial court's disqualification.