**William A. YOUNG, Plaintiff in Error,**

v.

**Mary E. YOUNG, Defendant in Error.**

No. 40050.

Supreme Court of Oklahoma.

Jan 22, 1963.

Rehearing Denied July 2, 1963.

Finch & Finch, Sapulpa, for plaintiff in error.

Blakemore & Wilson, Sapulpa, for defendant in error.

BERRY, Justice.

William A. Young, hereinafter referred to as "plaintiff", and Mary E. Young, hereinafter referred to as "defendant", were married in Creek County, Oklahoma, on June 22, 1954. To this marriage a daughter, hereinafter called "child", was born in 1955. Plaintiff filed for a divorce which was granted to him on September 18, 1957. Divorce decree left the custody of the child with defendant due to child's tender years, with visitation rights in plaintiff who was ordered to pay $40.00 per month child support. Both plaintiff and defendant were found fit and proper persons to have custody of child.

On March 2, 1960, the trial court modified the divorce decree and granted the father 3 months' custody out of the year (from June 1 to Sept. 1) and left custody in mother for remainder of year. Plaintiff was to pay transportation expenses of child to defendant's home in California. This order (hereinafter referred to as "first order"), was in effect from March 2, 1960 until the order of January 3, 1962, (hereinafter referred to as "last order".)

In June of 1960, plaintiff's mother and his wife by a subsequent marriage, hereinafter called "step-mother", went to California to obtain custody of the child in accordance with the first order. Upon reaching California they went to defendant's last-known address but were unable to locate defendant or the child or learn their whereabouts. It appears that defendant had moved and failed to give this information to plaintiff. Defendant was aware of the un-

successful effort of plaintiff to locate the child. It was not until February, 1961, that plaintiff learned the whereabouts of the child or of the defendant.

On the latter date, in response to a telephone call from California, plaintiff and the step-mother went to California. They found the child and her 10-year old step-brother in defendant's home. Defendant was not at home when they arrived. Plaintiff and his wife testified that the child was unattended; was "dirty" and hungry and in ill health, which was disputed by defendant. Plaintiff and his wife waited for some time before defendant returned. Defendant told them she was not then employed and that they could take the child back to Oklahoma with them. Plaintiff and his wife were to return the next day for the child. The next day defendant required plaintiff and the step-mother to sign an instrument prepared by a lawyer which obligated the return of the child to defendant in California on September 1, 1961 as provided in first order or plaintiff would be liable for $10,000.00. Upon plaintiff and his wife executing this instrument defendant permitted them to bring the child to Oklahoma.

Thereafter the step-mother wrote to defendant concerning the welfare of the child. Defendant did not write but sometimes telephoned, at least one time collect, and either talked to the step-mother or to plaintiff. Defendant sometimes asked for money when she telephoned. On one occasion plaintiff sent money to defendant for her return to Oklahoma. After receiving the money she failed to return due to financial problems. Plaintiff, on another occasion, sent defendant money to cover fare of child's step-brother to Oklahoma. The step-child's natural father came to Oklahoma for him and took him to his home in Nebraska.

On August 31, 1961, defendant called long distance and demanded the return of the child to California within 24 hours. Plaintiff was not at home but defendant talked to the step-mother who refused to comply with demand because plaintiff was

not at home. When plaintiff returned home and learned of the demand, he refused on the grounds, according to his testimony, that when he sent for defendant's other child, defendant had orally agreed that plaintiff could keep the child with him and enroll her in school in the fall.

Defendant later returned to Oklahoma, and on December 2, 1961, along with her sister, went to plaintiff's home to regain custody of the child. The step-mother was present but plaintiff was out of town. This visit ended with the step-mother ordering defendant and her sister out of the home.

Defendant, on December 4, 1961, filed application for the return of the child. On the same date plaintiff filed an application seeking modification of the custodial provisions of the first order.

On January 3, 1962, following a hearing on the mentioned applications, the court found and held that the first order should be reinstated but that plaintiff should have custody of the child until end of that school term after which the child was to be returned to defendant, from which order plaintiff has appealed.

Plaintiff states his contentions under two propositions: (1) Where the undisputed evidence shows that it is to the best interest of the child to be with her father rather than her mother it is an abuse of the discretion of the trial court for the child to be left in the custody of the mother; and (2) that the trial court had sufficient basis to change the custody from the mother when the mother refused to deliver child to father in violation of the trial court's order.

We shall consider these propositions in the order set out above.

Plaintiff cites Laughton v. Laughton, 71 Wyo. 506, 259 P.2d 1093, 43 A.L.R.2d 351, and quotes a portion of the opinion which, out of context is persuasive. In the cited case it is held that the burden of proof on a motion to modify lies with the applicant to show not only that the best interests of the child will be better served if applicant is granted custody and to show additionally that there has been a substantial change in conditions. In that case there was no evidence to show that there had been any change in conditions except the mother had remarried and was then in a better position to care for the child. The case pointed out that there is no authority which holds that a change in custody can be obtained where applicant shows that the best interests of the child are served without also showing that there has been a material change in conditions since the rendition of the first order.

The opinions of this Court tend to accord with the rule announced in the last cited case. In Jackson v. Jackson, 200 Okl. 333, 193 P.2d 561, this statement was made: "The plaintiff has not shown such change in the circumstances relating to the minor child occurring since the decree of divorce was rendered as to render modification proper or any material facts existing at the time of the decree unknown to the court that would warrant a modification of the decree." See also Wood v. Wood, 92 Okl. 297, 216 P. 936.

The record in the instant case shows that defendant had remarried and divorced since her marriage to plaintiff; that when she agreed to plaintiff's returning the child to Oklahoma in February, 1961, the child was not in kindergarten and defendant was then unemployed. The record is in conflict or is inconclusive as to whether child was in ill health in February, 1961, or if in ill health, such was due to neglect by defendant, or that child was then being neglected. In each respect the record is silent on the child's previous condition. The court's finding was that both parents were fit and proper to have custody. There is no evidence that material facts were concealed at the time of the first order which bore upon the best interests of the child.

The record tends to show that if defendant is granted custody she will be in much closer contact with the child than plaintiff if he were granted custody. The record, however, indicates that the step-mother would be in close attendance to the child if

plaintiff should be granted custody. This, however, is a dispute between the natural mother and the natural father. The record indicates that defendant is in less fortunate circumstances, than plaintiff and the step-mother. It also discloses that plaintiff's occupation as a truck driver requires his absence from the home except on weekends. Defendant, however, has adjusted her affairs so that she can be with the child most of the child's waking time. The trial court, no doubt, felt that by placing custody in the natural mother the best interests of the child would be served. For a case presenting analogous facts, see Fort v. Fort, 246 Ala. 83, 18 So.2d 870.

The evidence is in conflict as to whether step-mother wanted the child in her home. Under the evidence the trial court could properly have determined that the step-mother would prefer child not being in her home, which fact would bear directly upon the issues presented by this appeal. At p. 33, Sec. 840, 17A Am.Jur. "Divorce and Separation", it is stated that "The ultimate conclusion concerning the effect of remarriage and the change in home life may depend upon or be affected by the kind, character, or environment of the home. The following specific matters have been given consideration in determining the propriety of the requested modification: the character and disposition of the stepparent, the acquaintance of the child and the stepparent with each other, and their attitude or feelings toward each other, the relationship between the parent and the stepparent, and their attitude or feelings toward each other; * * *."

■ Plaintiff asserts that the paramount question in cases such as this is the best interest of the child and that custodial provisions of a decree or order will be materially changed where it is shown that to do so will be to the child's best interest. Plaintiff cites cases from this jurisdiction which sustain his assertions. A review of our decisions, however, develops that the change in conditions of the parties seeking custody must be substantial and one which bears directly upon the temporal, mental and moral welfare of the child. See Stanfield v. Stanfield, Okl., 350 P.2d 261; Guess v. Guess, Okl., 274 P.2d 369, and cited authority. Where the mentioned question is one of fact, the conclusion of the trier of the facts thereon will not be disturbed on appeal where an abuse of discretion is not shown. Davis v. Davis, Okl., 355 P.2d 572, and cited cases.

Let us now turn to plaintiff's second proposition. When defendant violated the order of the trial court in that she failed to deliver child to plaintiff, was this sufficient grounds for trial court to have changed the custody order. This proposition as stated fails to present the proper question. The question here is did the trial court abuse its discretion when it did not change the custody to the plaintiff? We think not. The trial court found not only that plaintiff was in arrears for child support but had also violated the custody provisions of the first order. This finding does not in itself dispose of the issue raised. The real issue is whether the trial court placed undue emphasis upon the acts of the litigants in order to enforce its order, and did these acts have a direct bearing on the welfare of the child?

■ The trial court should not award nor change custody of a child to punish one parent for contemptuous conduct; the court, however, may consider such conduct in determining the welfare of the child. See Green v. Perr, Mo.App., 238 S.W.2d 924. In this respect we conclude that the last mentioned contention is not supported by the evidence or law.

■ We think the trial court was in a better position to judge the qualifications of the parties and determine the welfare and best interest of the child than we are; that under the evidence it cannot be said that said court abused its discretion in finding as it did.

Affirmed.