Priscilla EARNST, Plaintiff in Error,

v.

Henry EARNST, Defendant in Error.

No. 41584.

Supreme Court of Oklahoma.

July 12, 1966.

Rehearing Denied Sept. 20, 1966.

Blumenthal & Gray, Oklahoma City, for plaintiff in error.

LaMar & Field, by Larry L. Field, Guymon, for defendant in error.

HALLEY, Chief Justice.

This is an appeal from an order modifying a divorce decree to change the custody of Troy Edmond Earnst, the minor child of the parties, from the mother, Priscilla Earnst (defendant) to the father, Henry Earnst (plaintiff).

The record in this case reveals that plaintiff and defendant were divorced from each other on the grounds of mutual incompatibility in the District Court of Texas County on November 5, 1962, with defendant being granted the custody of their minor child, and with plaintiff being given visitation rights and being required to pay $85.00 per month as child support.

On March 30, 1965, plaintiff filed a petition for modification of custody award alleging as grounds therefor that the circumstances and conditions regarding support and maintenance of the child had changed materially, in that the child was not receiving proper care under the custody of the defendant.

At a hearing held on April 7, 1965, the court modified the decree, vesting custody in the father and granting the mother visitation rights, and defendant perfected her appeal.

Defendant contends that under the evidence and law the action of the trial court was a clear abuse of discretion.

Plaintiff testified that he had paid all support payments required by the decree, except the last two; that he exercised his visitation rights without any problems until defendant moved to San Antonio, Texas, in June of 1964, and that due to distance involved, he had not visited the child while it had been in Texas; that he felt the child was not properly cared for, but that it was being properly fed, and had not been mistreated; that if the court awarded him custody, he would hire a housekeeper to take care of the child while he worked; that he now had the child in his custody by having the grandmother (defendant's mother) bring the child to him.

Mrs. West, defendant's mother, testified extensively, but her testimony can be summarized as follows: that she loved her daughter and the child, but felt that her daughter hadn't been taking proper care of the child, that the daughter's financial situation was not too good; that her daughter slept too late in the mornings after being out late at night; that she had to take care of the child on many occasions when the defendant was absent; that the child was sick a lot; that she felt the plaintiff was the proper person to have custody, because he was making more money than the defendant; that she had seen the child riding a bicycle in the street since the defendant had moved to San Antonio; that she objected to the child being cared for by a man that sleeps in the daytime; that she did not have permission of the defendant when she transported the child from San Antonio to the plaintiff in Oklahoma.

Defendant's father testified that he felt a child should have both a father and a mother; that he felt the defendant was capable of taking proper care of the child; that he knew the defendant had recently remarried; that if the defendant would show that she could stay at home and take care of the child, that he was all for it.

Defendant's grandmother testified that she lived in San Antonio; that defendant and the child lived in one of her rent houses when defendant first moved to San Antonio; that she took care of the child part of the time for defendant; that the child was not properly bathed and dressed by the defendant at times; that she felt that the defendant neglected the child; that defendant wouldn't take her advice; that defendant would be capable of being a mother if she put her mind to it.

Defendant's sister testified that in her opinion defendant was a good mother; that she kept the child clean and fed him; that her mother was an overindulgent grandmother; that the child would be better off with its mother; that she visited with

defendant and the child for one week at Christmas time in San Antonio.

Defendant's present husband, William Jones, testified that he and defendant were married on March 29, 1965; that he was going to school and will graduate in accounting; that he has job offers; that his parents have offered to help him and defendant with money, if they should need it; that he would help raise the child to the best of his ability; that he would welcome plaintiff's kin folks in his home if they would come half way; that he had served in the service for almost three years; that he helped the defendant care for the child for about a four day period when he was ill; that on this occasion, the defendant, the child and his two roommates shared his apartment; that this was necessary for the welfare of the child as the weather was cold and defendant's house was not warm; that he was 23 years of age and defendant was 26.

One Don Leeking, a former roommate and army friend of defendant's husband, testified that there was a good relationship between the child and defendant's husband; that he had never seen the defendant mistreat the child.

Defendant, in her own behalf, testified that her mother had, in effect, stolen the child from her when she took the child away from San Antonio without permission; that as soon as she discovered that the child was in Guymon, she and her new husband came to Guymon; that she tried to pick up the child, but was threatened with bodily harm; that she and the child lived for about five or six months after they first moved to San Antonio in a rent house owned by her grandparents; that she made the decision to keep the child at her future husband's apartment the time he was ill because of the cold weather; that she wanted her child back; that she has taken care of him properly and would do so in the future; that her new husband and the child get along very well; that she felt her mother was over-protective and overindulgent; that to her knowledge the child had never

been in the street alone, but that he might have; that she had no objection to the plaintiff visiting and being with the child; that she went to school when she first moved to San Antonio; that she received money from her mother while attending school; that she was engaged to her husband before they were married; that she had brought the child to Guymon two times since she moved to San Antonio and both times the plaintiff was allowed to visit with the child.

That she would be amenable to working out with the plaintiff a visitation schedule which would enable plaintiff to have the child for certain periods of time, that she felt the plaintiff was entitled to visit and be with his child.

In Young v. Young, Okl., 383 P.2d 211, we held:

"In awarding custody of a minor, the court should give paramount consideration to what appears to be for the best interest of the child in respect to its temporal, mental and moral welfare. In a proceeding to modify provisions of an order relating to custody of child, *burden of proof is upon applicant to show a substantial change in conditions since entry of order sought to be modified which bear directly upon the welfare and best interest of the child* or show that material facts bearing upon welfare and best interest of child were unknown to the court at time order sought to be modified was entered." (emphasis ours)

An examination of the court's finding, in light of the applicable rules, convinces us that the order of the court changing the custody from the defendant to the plaintiff was in error and was an abuse of the court's discretion.

The evidence submitted by the plaintiff in support of the modification of custody lacks probative value. Plaintiff's own testimony falls short of sustaining the burden set out in Young v. Young, supra. He admits that there were no problems until the defendant moved to Texas, that he "felt" the child was not being properly

cared for, but admitted that it was being properly fed and had not been mistreated. His offer to hire a "housekeeper" to take care of the child while he was working seems to be trivial and certainly no substitute for the care and attention of a mother. The testimony of defendant's mother and grandmother seems to be lacking the clarity and decisiveness necessary to be convincing. It reveals, at its best, ill-feeling and a long lived controversy between the defendant and her relatives. Neither testified that the defendant was an unfit mother, only the grandmother said she was neglectful, without any further explanation of the term. Such an opinion, expressed by a witness who from her other testimony is prejudiced, has little or no probative value.

Defendant's mother, in her testimony, alludes to the fact that plaintiff is financially able to take better care of the child. Such testimony is not helpful in determining what would be in the best interest of the child. If, after a proper hearing, the defendant shows that she needs more money to properly support the child, the plaintiff could be required to increase the amount of the monthly child support payments.

■ We are not impressed by the means used by the plaintiff, acting in concert with defendant's mother, to gain actual physical possession of the child. Such conduct, on his part, joined in if not instigated by the defendant's mother, only weakens his position. It is well settled in this state that the removal of a child from the state, does not deprive the appropriate district court of its continuing jurisdiction over questions pertaining to the custody of the child. Bishop v. Bishop, Okl., 321 P.2d 416. Plaintiff could have, and should have, without resorting to such an improper means, filed his application to modify the divorce decree, given the proper notice of the setting thereof to defendant, and had his day in court. See Fletcher v. Fletcher, Okl., 362 P.2d 691, where we said:

"Here the petition to modify the divorce decree was filed in the original action and the court had continuing jurisdiction. Notice to the adverse party was sufficient to enable the court to hear and determine the subject matter of said petition."

■ The child with whom we are presently concerned was, at the time of the hearing, of the age of 5 years. Custody of a child of tender years, other things being equal, must be given to the mother. Lewis v. Sisney, 205 Okl. 599, 239 P.2d 787. See also 30 O.S.1961, Sec. 11.

We said in the case of Currin v. Chadwick, 206 Okl. 148, 241 P.2d 947, that:

"The unfitness which will deprive a mother of the right to the custody of her minor child must be a positive and not merely a comparative unfitness; * * *

"It is not sufficient to establish the unfitness of a parent for the custody and control of her minor child to show that she has some faults of character, or bad habits; it must be shown that her condition in life, or her character and habits are such that provision for the child's ordinary comfort and contentment, or for its intellectual and moral development, cannot be reasonably expected at the parents' hand."

■ We have carefully examined the record and find that the judgment of the trial court is against the clear weight of the evidence and that the trial court has abused its discretion. The cause is therefore reversed and remanded to the trial court with instructions to the trial court to vacate its last order, reinstate the provisions of the divorce decree with respect to custody, and upon such reinstatement, determine the question of attorney's fees, which was raised by defendant's brief, but according to the record before us, not ruled upon by the trial court, nor answered in plaintiff's brief.

Reversed and remanded with directions.

DAVISON, WILLIAMS, BLACKBIRD, BERRY and LAVENDER, JJ., concur.

JACKSON, V. C. J., and IRWIN and HODGES, JJ., dissent.