2007 OK 58

**MILLER DOLLARHIDE, P.C.,**
Plaintiff/Appellee,

v.

**Moshe TAL, Defendant/Appellant.**

No. 100,179.

Supreme Court of Oklahoma.

July 3, 2007.

Jack S. Dawson, Mark Edmondson, Oklahoma City, OK, for the Appellee.

Moshe Tal, Oklahoma City, OK, Pro se.

KAUGER, J.

¶1 The questions presented are whether: 1) a trial judge's continued participation in a cause while motions for disqualification are pending deprive the movant of a fundamental right to due process; and 2) the trial judge abused his discretion when he declined to disqualify. We hold that: 1) a trial judge's continued participation while motions to disqualify are pending results in a deprivation of due process; and 2) the refusal to disqualify was an abuse of discretion.

## FACTS

¶2 The facts surrounding the genesis of this action are discussed in *Miller Dollarhide, P.C., v. Moshe Tal*, 2006 OK 27, — P.3d —, 2006 WL 1148158 (*Miller Dollarhide I*), but the following facts are relevant to disposition of this appeal. The appellant, Moshe Tal (Tal/client) sought to remove the trial judge when he made a written in camera request under District Court Rule 15[1] for recusal on February 11, 2003. Following the trial court's refusal to grant his request, Tal filed a formal motion to disqualify, which was considered by the Chief Judge of Oklahoma County[2] and which was denied on the merits.[3]

1. District Court Rule 15, Rules for the District Courts of Oklahoma, 12 O.S.2001, Ch. 2, App., provides for the following procedural process in seeking the recusal or disqualification of a District Court Judge in a pending matter:

   a. Before filing any motion to disqualify a judge, an in camera request shall first be made to the judge to disqualify or to transfer the cause to another judge. If such request is not satisfactorily resolved, not less than ten (10) days before the case is set for trial a motion to disqualify a judge or to transfer a cause to another judge may be filed and a copy delivered to the judge.

   b. Any interested party who deems himself aggrieved by the refusal of a judge to grant a motion to disqualify or transfer a cause to another judge may re-present his motion to the Chief Judge of the county in which the cause is pending or, if the disqualification of a Chief Judge is sought, to the Presiding Judge of the administrative district by filing in the case within five (5) days from the date of said refusal a written request for re-hearing. A copy of the request shall be mailed or delivered to the Chief Judge or Presiding Judge, to the adverse party and to the judge who entered the original order. If the hearing before the second judge results in an order adverse to the movant, he shall be granted not more than five (5) days to institute a proceeding in the Supreme Court or the Court of Criminal Appeals for a writ of mandamus. Neither the Supreme Court nor the Court of Criminal Appeals will entertain an original proceeding to disqualify a judge or to direct a judge to transfer a cause to another judge unless it is shown that the relief sought was previously denied by the judge to whom the matter was re-presented in accordance with this rule. An order favorable to the moving party may not be reviewed by appeal or other method.

   c. An original proceeding in mandamus to disqualify a judge in a civil action or proceeding shall be brought in the Supreme Court; an original proceeding in mandamus to disqualify a judge in a criminal case or proceeding shall be brought in the Court of Criminal Appeals. If mandamus is not brought in the appellate court designated as proper by this rule, the case will be transferred to the proper court either on motion or sua sponte. Art. VII, § 4 Okla. Const.

2. We note that Oklahoma County uses a rotating Chief Judge system. The record reflects that Tal's first motion to disqualify the trial judge was presented to the Honorable Susan Caswell, District Judge, while his second motion to disqualify was presented to the Honorable Jerry Bass, District Judge.

3. The motion should have been considered in the first instance by the trial court before being presented to the Chief Judge. However, the following discussion took place between the parties and Judge Harbour on the record during proceedings on April 18, 2003, and makes clear that the trial court was aware the motion was filed:

   "... THE COURT: Four, five, eight, nine. Now, you have filed a Motion to Disqualify and transfer the actions to the chief judge so they can make a reassignment. Have you filed these motions? Are these before the chief judge?
   MR. TAL: Yes, your Honor.
   THE COURT: So these are set now before the chief judge.

¶3 On October 30, 2003, the trial court entered a default judgment against Tal for failing to appear at a scheduling conference and set a date for a hearing on damages. Tal then sought vacation of the default judgment, and on November 24, 2003, the parties appeared for a hearing before the trial court on the motion to vacate. During the hearing the trial judge denied the motion to vacate and announced that he would set an evidentiary hearing on the issue of the amount of the claim. Tal again sought the trial judge's disqualification, handed the judge a letter requesting an in camera review to recuse and insisted that the trial court stay the matter until the disqualification issue had been resolved. Instead, the trial court denied the request, but did not memorialize the denial.[4]

¶4 On December 8, 2003, the cause was scheduled for an evidentiary hearing and Tal filed a renewed motion to disqualify which the trial court denied on the spot. Tal left the hearing to deliver the motion to the Chief Judge.[5] In denying the motion, the Chief Judge found no additional evidence of bias

requiring disqualification occurring between the filing of the two disqualification motions.

¶5 Pursuant to Rule 15(b), Tal brought a mandamus action in this Court to review the denial of his motion. At the same time, Tal also brought a direct appeal from the denial of his motion to vacate the default judgment, in which he argued that the trial judge should have been disqualified because of bias. On February 17, 2004, this Court assumed original jurisdiction in the mandamus action but we declined "to disqualify the trial judge in both cases." On July 25, 2005, the Court of Civil Appeals affirmed the trial court's denial of the motion to vacate, and specifically declined to consider the issue of bias.

¶6 The Court of Civil Appeals in *Miller Dollarhide I* determined that our February 17, 2004, order denying mandamus relief was the law of the case. We granted certiorari and determined that: 1) Tal's claims of bias were preserved for appellate review; 2) assuming jurisdiction and denying relief in the original mandamus action did not bar the

---

MR. TAL: It's set before Judge—
THE COURT: Before Judge Caswell."

4. Tal sought guidance from the trial court as to how to proceed under Rule 15, but the court went into recess without resolving the matter. The transcript of November 24, 2003, provides in pertinent part at p. 43:

MR. TAL: Your Honor, one more thing on the—I know we went through it with Rule 15 already a few times. On the in camera order, after you rejected it, I'm supposed to file another motion formally before you, and another hearing before you, and then after it's denied, go again to the Chief Judge and then go to the Supreme Court.
Are you agreeing to eliminate the steps and just let me go to the Supreme Court ahead, since we know the results? It's going to be repeated....

5. The transcript of the December 8, 2003, provides in pertinent part pp. 3–7:

... THE COURT: I have received this morning, apparently filed as well this morning, a Motion to Disqualify by Mr. Tal, a Motion to Disqualify and to stay rulings on that issue pending resolution of the Motion to Disqualify....They seem to me to be the same as I've previously ruled upon in this case and will deny, without a hearing, the Motion to Disqualify....
MR TAL: I'm objecting, Your Honor. I fell into your trap last time. We did the same

thing. I filed a Motion to Disqualify. You denied it on the spot. When I went to Judge Caswell, she told me that I did not follow the rule, Rule 15, and she should not even hear my motion....
Now your Honor, I have no objection to you rejecting it under rule (inaudible), but I want to make sure this time that the procedure is followed because I don't want to go in front of the Chief Judge again and tells me that the way I brought it before the Chief Judge is defective. So if they want to file a response today and you want to reject it tomorrow, that's fine. But even then, I'm putting you on notice right now that I'm going to resubmit it to the Chief Judge.... So I'm asking you again to stay any proceeding here, allow me to follow the rule. I don't want to fall into the trap again and go in front of the Chief Judge and tell me that I didn't follow the rule and that I can't even go to appeal on it or do a writ of mandamus....
THE COURT: Court will stand on its ruling. Very well ...
MR TAL: Your Honor—
THE COURT: We are proceeding.
MR TAL: No. I'm not going to stay here. Your Honor. I'm not going to fall into your trap again. I'm not going to stay here. I have the right to submit it, according to Rule 15, to the Chief Judge. Okay? I'm going to submit to the Chief Judge right now. Okay. that's my constitutional right....
THE COURT: So I'm going to go ahead with the evidentiary hearing—

Court of Civil Appeals from considering the issue on appeal; and 3) we remanded the cause to the Court of Civil Appeals to decide the merits of the bias claim. On remand, the Court of Civil Appeals held that the trial court did not abuse its discretion in denying the motion to disqualify. We again granted certiorari on May 7, 2007.

## I.

**¶ 7 A TRIAL COURT'S CONTINUED PARTICIPATION WHILE MOTIONS TO DISQUALIFY ARE PENDING RESULTS IN A DEPRIVATION OF DUE PROCESS.**

■ ¶ 8 Throughout the course of this proceeding, Tal has objected to the trial court's refusal to stay the proceedings while the motion to disqualify was pending. Tal relies on *Clark v. Board of Education of Independent School District No. 89*, 2001 OK 56, 32 P.3d 851, in support of his argument.

¶ 9 *Clark* involved the constitutional implications to a movant when a trial judge neglects to rule on a request for disqualification, yet continues to preside over the cause. The movant in *Clark* filed two documents requesting that the trial judge be disqualified, but the record contained no memorialized disposition of either request. Recognizing the implications of due process when challenging the impartiality of a trial judge, the Court said:

A fundamental requirement of due process is a fair and impartial trial. A neutral and detached judiciary is imperative to ensure procedural fairness to individual litigants and to preserve public confidence in the integrity of the judicial process. Every litigant is entitled to nothing less than the cold neutrality of an impartial judge. A challenge to an assigned judge for want of impartiality presents an issue of constitutional dimension which must be resolved and the rule memorialized of record after a meaningful evidentiary hearing. The

quest for recusal may not be ignored, **nor is a judge free to proceed with the case until the challenge stands overruled of record following a judicial inquiry into the issue** . . . . (citations omitted, emphasis added).

We explained the three-step process for challenging the assigned judge's neutrality and detachment under District Court Rule 15:[6] 1) the party must first informally ask the trial judge in camera to recuse from the case or to transfer it to another judge; 2) when met with an unsatisfactory response, the requesting party must then formally request (not less than 10 days before the case is set for trial) that the trial judge recuse or transfer the cause; 3) if the trial judge refuses to recuse, the party may then re-present the earlier formal request to the chief judge of the county where the case is pending. If the latter hearing should also result in an adverse order, the aggrieved litigant may then seek relief by mandamus in this Court.

■ ¶ 10 The *Clark* Court explained that failing to rule on a quest for recusal bars further access to the relief afforded by the Rule 15 procedure and that without a memorialized ruling, a movant can neither proceed to the third or final Rule 15 stage. Under the teachings of *Clark*, when a trial court is presented with a request to disqualify, *it is not a matter of discretion* to refrain from presiding over the case until the disqualification ruling is memorialized and the movant has, at the movant's option,[7] exhausted the Rule 15 procedure.

¶ 11 Here, the Rule 15 procedure was not followed by either the trial court or the movant. As we explained in *Miller Dollarhide I*:

The first attempt began with Tal's February, 2003 in camera letter requesting recusal. When his request was denied, Tal filed a timely formal motion in the trial court. The record is silent on why that motion was not considered by, or ruled upon by the trial court, but under our

---

6. Rule 15 of the Rules for the District Courts of Oklahoma, 12 O.S.2001, Ch. 2, App., see note 1, supra.

7. In *Pierce v. Pierce*, 2001 OK 97, ¶¶ 3–5, 39 P.3d 791, we held that Rule 15 does not require that

mandamus be sought in one of the supervisory courts and that failure to seek mandamus does not preclude review of the disqualification issue on appeal.

decision in *Clark v. Board of Education of Indep. Sch. Dist. No. 89*, 2001 OK 56, ¶¶ 5–11, 32 P.3d 851, the failure of the trial court to rule on the Rule 15 motion in the first instance was error. This error, which should not be attributed to Tal under these facts, was nevertheless mooted by the fact that the Chief Judge did in fact hear the motion and denied it on the merits.

At this point, Tal was entitled, pursuant to Rule 15(b), to bring a mandamus action in this Court within five days of the Chief Judge's order denying relief. However, Tal chose not to seek mandamus relief from the order as it applied to this case. Rather, Tal stood on the record, and under our holding in *Pierce v. Pierce*, 2001 OK 97, ¶ 10, 39 P.3d 791, the issue was perfected for appellate review on appeal from any adverse final judgment to Tal. It is clear that the Chief Judge correctly limited his consideration of the second motion for disqualification to only those actions allegedly occurring after the denial of Tal's previous Rule 15 motion. It was from this limited ruling, that no new evidence of bias was present, that Tal sought the mandamus relief we denied. Therefore, we hold that Tal's claims of bias were preserved for appellate review. *Miller Dollarhide, P.C. v. Moshe Tal*, 2006 OK 27, ¶¶ 6–7, —— P.3d ——.

¶ 12 The second attempt at disqualification occurred during a November 24, 2003, hearing concerning vacation of the default judgment. During that hearing, Tal sought the trial judge's disqualification but the trial judge denied his request. Tal renewed the motion at the next hearing which was held on December 8, 2003, by presenting the judge with a filed, written renewed request to disqualify and request to stay the proceedings. The trial court denied the motion from the bench and refused to stay the proceedings, even though Tal informed the court of his intent to present the matter to the chief district judge immediately. Without a memorialized ruling and before the matter was decided by the Chief Judge, the trial court continued to preside over the proceeding and entered a journal entry of judgment.

¶ 13 Apparently, confusion exists over *Clark v. Board of Education of Independent School District No. 89*, supra, and its mandate regarding whether a trial court may continue to rule on a matter while a motion to recuse is pending. In November of 2006, this Court issued an order in another cause directing the trial court to vacate all orders entered while a motion to recuse was pending and to refrain from further rulings until completion of Rule 15 proceedings.[8] Pursuant to *Clark v. Board of Education of Independent School District No. 89*, supra, the actions of the trial court in its continued participation while motions to disqualify are pending results in a deprivation of due process and constitute reversible error.

## II.

### ¶ 14 THE REFUSAL TO DISQUALIFY WAS AN ABUSE OF DISCRETION.

¶ 15 The appellee argues that the trial court did not abuse its discretion in denying the motion to disqualify because there was no showing of any bias or prejudice. Tal insists that the record supports specific instances of conduct by the trial judge which would support disqualification.

¶ 16 The due process clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.[9] Every litigant is entitled to nothing less than the cold neutrality of an impartial judge.[10] In disqualification proceedings the courts must be sensitive to the appearances of possible impropriety as well as to the actual occurrences.[11] The purpose of disqualifica-

---

8. Cause, No. 103,853, *Tal v. Robertson* also involving the appellant.

9. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980).

10. *Pierce v. Pierce*, see note 7, supra at ¶ 13; *Johnson v. Board of Governors of Registered Den-*

tists, 1996 OK 41 ¶ 32, 913 P.2d 1339; *Craig v. Walker*, 1992 OK 1, ¶ 5, 824 P.2d 1131; *Sadberry v. Wilson*, 1968 OK 61, ¶ 15, 441 P.2d 381; *Pitman v. Doty*, 1968 OK 16, ¶ 0, 441 P.2d 428.

11. *Pierce v. Pierce*, see note 7, supra at ¶ 13; *Holloway v. Hopper*, 1993 OK 56, ¶ 7, 852 P.2d 711. Canon 2 of the Code of Judicial Conduct, 5

tion when impartiality is called into doubt is to preserve the purity and impartiality of the court and to foster the respect and confidence of the people for its decisions.[12]

¶ 17 Where there are circumstances of such a nature as to cause doubts as to a judge's partiality, it is the judge's duty to disqualify notwithstanding the judge's personal belief that the judge is unprejudiced, unbiased, and impartial.[13] When such circumstances exist, the error, if any, should be made in favor of the disqualification rather than against it.[14] Justice must satisfy the appearance of justice, even though this stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.[15]

¶ 18 In *Pierce v. Pierce*, 2001 OK 97, ¶ 19 and ¶ 21, 39 P.3d 791 we addressed the burden of proof and standard of review for judicial disqualification procedures. We noted that:

> ... The common law contains a presumption that a judge is not biased, and a party must point to some fact to overcome the presumption to require disqualification because of bias. ... Similarly, a party must

point to some fact to substantiate a claim that the appearance of a fair trial is not present, or that the judge's impartiality might reasonably be questioned. ... When an order of a judge in a civil proceeding denies a disqualification application that order will not be reversed on appeal unless a clear abuse of discretion is shown. ... Generally, a clear abuse of discretion occurs when the decision challenged is against, or not justified by, reason and evidence. (Citations omitted).

¶ 19 We have reviewed the entire record. Throughout the proceedings it is evident that there was elevated tension between the trial judge and Tal at nearly every hearing. This began when the trial court ordered that the parties be realigned so that the law firm would appear as a plaintiff and Tal as a defendant over Tal's objection. Tal's objection to the realignment was based on his opinion that the law firm did not want to appear to be sued by a former client.

¶ 20 Both Tal and the trial judge had frequent colloquies which provoked the trial judge to question Tal's veracity from the bench.[16] The trial judge even bickered with

---

O.S.2001, Ch. 1, App. 4 provides in pertinent part:

> A. A judge should respect and comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. ...

**12.** See, *State ex rel. Bennett v. Childers*, 1940 OK 389, ¶ 7, 105 P.2d 762; *State ex rel. Vahlberg v. Crismore*, 1949 OK CR, 90 Okla.Crim. 244, 213 P.2d 293, 295; *Dennison v. Christopher*, 19 Okla. Crim. 467, 200 P. 783.

**13.** *Johnson v. Board of Governors of Registered Dentists*, see note 10, supra; *Merritt v. Hunter*, 1978 OK 18, ¶ 5, 575 P.2d 623; *Sadberry v. Wilson*, see note 10, supra at ¶¶ 12–15; *Pitman v. Doty*, 1968 OK 16, ¶ 10, 441 P.2d 428; *Heard v. Sullivan*, 1955 OK 41, ¶ 0, 280 P.2d 708. Canon 3 of the Code of Judicial Conduct, 5 O.S.2001, Ch. 1, App. 4 provides in pertinent part:

> ... E. Disqualification
> (1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
> (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer,
> ...

**14.** *State ex rel. Bennett v. Childers*, 1940 OK 389, ¶ 10, 105 P.2d 762; *State ex rel. Vahlberg v. Crismore*, see note 12 supra. See, *Stephenson v. Miracle*, 1950 OK CR., 90 Okla. Cr.Crim. 299, 213 P.2d 875 (A judge should not try a case in which there is any substantial ground on which to base a claim for disqualification and an error, if made, should be in favor of disqualification rather than against it.).

**15.** *Pierce v. Pierce*, see note 7, supra at ¶ 18; *Marshall v. Jerrico, Inc.*, see note 9, supra.

**16.** For example, in a hearing held on April 18, 2003, the following exchange took place:

> "... MR. TAL: I mean, the night before I come to you I can't sleep you know. You're affecting my live [sic]. I can't function.
> THE COURT: Well, I'm sorry about that.
> MR. TAL: You know. Well, but that's the way it is when you yell at me over there, embarrass me, humiliate me.
> THE COURT: whoa. whoa. whoa. I have never yelled at you.
> MR. TAL: You humiliated me in front of people over there.
> THE COURT: You are going to sit here and tell the court that I've humiliated you, that I've yelled at you?

Tal over whether he actually called him a liar, implied that he was a liar or merely informed him that he believed that some of Tal's story was concocted.[17] Tal contends that, at the very least, the appearance of bias and impartiality was created when the opposing counsel had *ex parte* communications with the trial judge's clerk and possibly the trial judge just eight days after Tal served the judge with his first in camera recusal request in February of 2003.[18] We conclude that although the trial court may have believed himself to be unprejudiced, unbiased and impartial, circumstances of this cause are of such a nature at to cause doubts as to the impartiality. Consequently, error, if any, should be made in favor of disqualification.

> MR TAL: I felt humiliated.
> THE COURT: Mr. Tal, that is an absolute lie. That is not true. I have never done that.
> MR. TAL: And then a judge is calling me a liar.
> THE COURT: You are—Mr. Tal, you are baiting me and I'm not falling for it. . . ."

At another hearing on November 19, 2003, the following exchange occurred:

> . . . "MR. TAL: And you told me it's a lie.
> THE COURT:—that I did not?
> MR. TAL: Yeah, You told me that's a lie. That's a lie.
> THE COURT: All right.
> MR. TAL: Well, when you tell me that what I stated on my affidavit is a lie—
> THE COURT: I can see where you are coming from.
> MR. TAL:—you are calling me a liar.
> THE COURT: I can see where you are coming from.
> MR. TAL: I mean whoever is sitting in the crowd—
> THE COURT: I've already denied that I said such a thing so lets go on. . . ."

**17.** The November 19, 2003, hearing the transcript provides:

> ". . . .THE COURT: . . . I do know this, that you have been the strongest of advocates for your position, and I won't hesitate that at all, and that if you have missed any hearings, which I don't believe that you have, that I cannot recall any hearings that you—previous hearings that you missed. But here I think that for me to vacate this on what the Court considers, and I do—I consider this to be a concocted story, and I debated on this with myself—
> MR. TAL: A What story? I'm sorry.
> THE COURT: A concocted story. I just think the story is a concocted story between—at to you having conversations with Mr. Scimeaca
> . . .
> THE COURT: Tell me what you disagree with. I haven't read it so—

The trial court's refusal to disqualify was an abuse of discretion.

## CONCLUSION

¶ 21 When a Rule 15 proceeding to seek disqualification of a trial judge is initiated, the trial court must refrain from presiding over the case until the disqualification ruling is memorialized and the movant has, at the movant's option, exhausted the Rule 15 procedure.[19] Because the trial court continued to participate while motions to disqualify were pending, the movant was deprived of due process and reversible error occurred. Although a trial court is presumed unbiased,

> MR. TAL: 'The Court determined that Tal did not have a telephone conversation.' I guess you did in a way say that I—What was the word that you used?
> THE COURT: Concocted, c-o-n-c-o-
> MR. TAL: Concuted. Does that mean lies, fabricating, that I fabricated it?
> THE COURT: Created.
> MR. TAL: Creating it would be fabricating it if—if I'm creating the truth, it's not—
> THE COURT: I picked the word concocted because I think that's the word that I believe the situation—
> MR. TAL: I would like you to add that wording in it, please. . . .

In the order of November 21, 2003, the trial judge wrote on the order that "Tal concocted that a telephone conversation with plaintiff's counsel occurred prior to the Scheduling Conference. . . ."

**18.** The motion for attorney fees filed January 6, 2004, includes a charge for $165.00 for 1hour on February 19, 2003, which is described as "MSE telephone conference with Judge Harbour's clerk, to Judge Harbour's chambers to check on hearing and file pleading." The trial judge later struck fees which he thought were inappropriate. The trial transcript of February 20, 2004, provides in pertinent part at p. 16:

> . . . But in considering all of the factors here, I do think—and deleting—taking the amended request of the Movant, and also the Court went through and deducted what I thought were items that were not necessarily appropriate and that should be reduced, including telephone conversations with my staff, and then there were some times in which I thought exceeded what I thought was a reasonable amount of time. I have made the total deductions of $6,950.00 and will award attorney fees in this case . . .

**19.** *Clark v. Board of Education of Independent School District No. 89*, 2001 OK 56, 32 P.3d 851.

where a party points to some facts to substantiate a claim of a reasonable appearance of partiality, disqualification should occur.[20] Here, circumstances cause doubts as to the trial court's impartiality, and the trial court abused its discretion when it refused to disqualify. Therefore, the trial court is directed to: 1) vacate all orders entered while the motions to recuse were pending; and 2) refrain from further rulings in this cause.

## CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED.

EDMONDSON, V.C.J., OPALA, KAUGER, WATT, TAYLOR, COLBERT, JJ., concur.

WINCHESTER, C.J., LAVENDER, HARGRAVE, dissent.

WINCHESTER, C.J., dissenting:

¶1 I would deny certiorari because the Court of Civil Appeals (COCA) correctly decided this case. Therefore, I dissent.

¶2 This case was remanded to the COCA to decide the merits of Tal's claim of trial court bias. *Miller Dollarhide P.C. v. Tal*, 2006 OK 27, ¶17, —— P.3d ——. The COCA opinion concluded that Tal had failed in his attempt to show bias. When an order of a judge in a civil proceeding denies a disqualification application, that order will not be reversed on appeal unless there has been a clear abuse of discretion. *Graham v. Graham*, 1967 OK 210, ¶8, 434 P.2d 245, 246; *Merritt v. Hunter*, 1978 OK 18, ¶2, 575 P.2d 623, 624. Generally, a clear abuse of discretion occurs when the decision challenged is against, or not justified by, reason and evidence. *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶20, 987 P.2d 1185, 1194. "To reverse a trial court on the ground of abuse of discretion it must be found that the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence." *Abel v. Tisdale*, 1980 OK 161, ¶20, 619 P.2d 608, 612. "It is discretion employed on untenable grounds or for untenable reasons, or a discretionary act which is manifestly unreasonable." *Patel*, 1999 OK 33, ¶20, 987 P.2d at 1194. The question before this Court is whether one trial judge and two chief judges of the district court made clearly erroneous conclusions and judgments, against reason and evidence regarding the bias of the trial judge.

¶3 The trial court entered a default judgment against Tal on October 30, 2003, when he failed to appear. The court subsequently denied his motion to vacate and scheduled a hearing to determine the amount to be awarded the plaintiff law firm. On December 8, 2003, the trial court awarded the law firm $66,408.29, which represented legal fees owed by Tal for his earlier representation by the firm.

¶4 When the trial judge denied Tal's request that the judge recuse, he made a formal motion to disqualify. That motion was heard by Judge Caswell, then the Chief Judge of the Oklahoma County District Court. Even though the judge found that Tal failed to comply with the Rule 15 procedure, the judge also found that nothing in the record showed bias or prejudice on the part of the trial judge. At the November 24, 2003, hearing on Tal's motion to vacate the default judgment, he again asked the trial judge to recuse, and again the judge refused. Tal filed a second formal motion to disqualify the trial judge, and Judge Bass, the new Chief Judge, reviewed the motion on the merits and found no evidence of disqualifying bias occurring since Judge Caswell's decision. These facts are found in this Court's last opinion in this matter. *Miller Dollarhide, P.C.*, 2006 OK 27, ¶¶2–4, —— P.3d ——.

¶5 In his petition for certiorari Tal makes several assertions of procedural error in holding the hearings before the trial judge regarding bias, but none of his arguments are relevant to bias on the part of the trial judge. Tal argues that the trial court failed to follow Rule 15, and that the opposing counsel was guilty of improper *ex parte* communications with the trial judge. None of the recognized grounds for certiorari is apparent.

**20.** *Pierce v. Pierce*, see note 7, at ¶¶19–21, supra.

¶ 6 Tal had two hearings before the trial judge on bias, two before different chief judges, each of whom found no prejudicial bias, and before the Court of Civil Appeals, which found no bias. There is no "clearly erroneous conclusion and judgment, against reason and evidence." *Abel,* 1980 OK 161, ¶ 20, 619 P.2d at 612. There is no substantial ground in this case on which to base a claim for disqualification and error. Even a review of the facts and quotations of transcripts found in the majority opinion shows this to be so. Parties to lawsuits should not be allowed to eliminate trial judges who are ruling against them through the process of claiming bias merely as a trial tactic.

¶ 7 There is no showing of prejudicial bias in this case by the trial judge. There is no support that either of the Chief Judges who reviewed this matter on the merits clearly abused their discretion in concluding that there was no prejudicial bias. There is nothing cited by the majority opinion to show prejudicial bias by the trial judge. I would deny certiorari. Accordingly, I dissent.